[No. 10,610.—Department One.]
April 25, 1881.

## EX PARTE FREDERICK BERNERT.

LICENSE—MUNICIPALITY—REPEAL OF STATUTE.—Assuming, without deciding, that the Act of March 29, 1878 (Stats. 1877–8, p. 442), relates to *municipal* as well as State licenses, it simply enumerates certain businesses and occupations, and declares what shall be paid for licenses by each of those specified. It does not operate a repeal of the Act of March 30, 1872 (Stats. 1871–2, p. 737), which authorizes the Board of Supervisors to fix the sum to be paid by different trades, occupations, and businesses or employments carried on or conducted within the limits of the municipality, *except* to the extent of the particular businesses, etc., *specified* in the act. Neither does the act expressly or impliedly repeal the first section of the Act of 1872, which limits the punishment of those found guilty of refusing to take out a license as required by any lawful order of the Board of Supervisors.

ID.—ORDINANCE—MISDEMEANOR—PENALTY—JURISDICTION.—The petitioner was convicted in the Police Court of San Francisco, and adjudged to pay a find of $20, and in default of payment to be imprisoned in the county jail for the period of ten days, for the offense of violating an ordinance entitled "Order No. 1589," portions of which are as follows: "Sec. 1. Any person who shall violate any of the provisions of the above order

shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than one thousand dollars, or by imprisonment not more than six months, or by both." "Sec. 10, subd. 43. Each proprietor of a billiard-table and pool-table, not kept exclusively for family use, shall pay a license of six dollars a quarter, and for a bowling-alley six dollars a quarter, and for each additional alley five dollars a quarter." By the first section of the Act of March 30, 1872—under which the authority to enact the ordinance in question was derived—it is provided that any person carrying on any business within the limits of a city which is or shall be required to be licensed, without having first obtained the license therefor, as required by the laws of the State, "or by the lawful orders of the Board of Supervisors of such city and county," shall be deemed guilty of a misdemeanor, and, on conviction thereof, "shall be punished by a fine of not *less* than one hundred dollars or by imprisonment for a period not *exceeding* thirty days in case the fine is not paid.

*Held:* By the ordinance and act referred to it is, in effect, provided that the Police Court shall have power to fine only in the sum of one hundred dollars, or a greater sum not exceeding one thousand dollars, and that the imprisonment shall be inflicted only in case the fine of one hundred dollars or more is not satisfied by payment. In rendering the judgment, therefore, the Police Court transcended its jurisdiction.

ID.—ID.—ID.—ID.—POOL-TABLE—GAMING.—The letting to hire of a pool-table does not necessarily involve gaming for money or value.

ID.—ID.—ID.—ID.—The ordinance only requires those who make a "business, calling, or employment" of keeping a pool-table to pay a license, and it is therefore not open to the objection that it imposes a license upon the proprietor of a pool-table not kept for hire.

ID.—ID.—ID.—ID.—APPEAL.—Upon an appeal from a void judgment of the Police Court this Court might remand the case, with directions that defendant be sentenced; but in a proceeding by *habeas corpus* it can not command the entry of a judgment in the lower Court, and therefore ought not to permit the petitioner to remain in jail upon the conjecture that the Court which pronounced the judgment may become convinced of its invalidity, and then proceed to enter a different judgment.

APPLICATION for release on writ of *habeas corpus.*

*H. G. Sieberst*, for Petitioner.

The statute of 1878 embraces the provisions of the statute of 1872, and fixes licenses, and operates as a repeal of all antecedent enactments. (*Commonwealth* v. *Kelliher*, 12 Allen, 480 ; *Bartlett* v. *King*, 12 Mass. 537; *Commonwealth* v. *Cooley*, 10 Pick. 39 ; *Nichols* v. *Squire*, 5 Id. 168; *Daviess* v. *Fairbairn*, 3 How. (U. S.) 636.)

*D. L. Smoot*, District Attorney, and *W. C. Graves, contra.*

McKINSTRY, J.:

The petitioner was convicted in the Police Court of San Francisco (and adjudged to pay a find of $20, and, in default of payment thereof, to be imprisoned in the county jail for the period of ten days) of the offense of violating an ordinance entitled "Order No. 1589," portions of which are as follows:

"Section 1. Every person who shall violate any of the provisions of this order shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than one thousand dollars, or by imprisonment not more than six months, or by both."

"Section 10, subdivision 43.    Each proprietor of a billiard-table and pool-table, not kept exclusively for family use, shall pay a license of six dollars a quarter, and for a bowling-alley six dollars a quarter, and for each additional alley, five dollars per quarter."

The authority of the Board of Supervisors to enact the ordinance is derived, as is claimed, from the third section of the Act of March 30, 1872 (Stats. 1871–2, p. 737), wherein it is provided that the Board shall have power, by ordinance, "to license and regulate all such callings, trades, and employments as the public good may require to be licensed and regulated, and as are not prohibited by law."

The first section of the same act provides that if any person shall be engaged in carrying on, pursuing, etc., within the limits of the city and county, any business, etc., which is or shall be required to be licensed, without having first obtained the license therefor, as required by the laws of this State, "or by the lawful orders of the Board of Supervisors of said city and county," he shall be deemed guilty of a misdemeanor, and, on conviction thereof, "shall be punished by a fine of not *less* than one hundred dollars, or by imprisonment for a period not *exceeding* thirty days in case the fine is not paid."

The first question to be considered is whether Order 1589, which provides that any person who shall violate any of the provisions of the order "shall be punished by a fine of not more than one thousand dollars, or by imprisonment of not more

than six months, or by both," authorized the sentence which was imposed upon the petitioner. The third section of the Act of March 30, 1872, empowered the municipal government to establish a reasonable penalty for a violation of any license ordinance it might pass, with the condition and limitation (found in Section 1 of the same act) that the penalty should in no case be a fine of *less* than one hundred dollars, with an imprisonment of not exceeding thirty days in case the fine should not be paid. The first section of Order 1589, therefore, if it be read in the light of the Act of 1872, did not authorize a fine of *twenty* dollars, or any imprisonment as an alternative. If, however, the order could be read as authorizing a fine of less than $100, the order to that extent would be invalid, since by reason of the first section of the law of 1872, the Supervisors had no power to provide as a punishment a fine of less than $100. But this would not affect the rest of the ordinance.

Counsel for petitioner claims that the Act of 1872 has been repealed by the Act of March 23, 1878 (Stats. 1877–8, p. 442). Assuming, without deciding, that the act of 1878 relates to *municipal* as well as State licenses, it simply enumerates certain businesses and occupations, and declares what shall be paid for license by each of those specified. It does not operate a repeal of the provisions of the Act of 1872, which authorizes the Board of Supervisors to fix the sum to be paid by different trades, occupations, businesses, or employments carried on or conducted within the limits of the municipality, *except* to the extent of the particular businesses, trades, professions, occupations, or employments " specified " in the act. Neither does the Act of 1878 expressly or impliedly repeal the first section of the Act of 1872, which limits the punishment of those found guilty of refusing to take out a license as required by any lawful order of the Board of Supervisors.

The power of the Police Court of San Francisco to sentence one guilty of a violation of the ordinance comes from the first section of the Act of 1872, which provides that the party convicted shall be punished by a fine of not less than one hundred dollars, or by imprisonment for a period not exceeding thirty days in case the fine is not paid, and from the ordinance—1589—which fixes the maximum of fine at $1,000. The

language employed is, in effect, a declaration that the Police Court shall have power to fine only in the sum of one hundred dollars, or a greater sum not exceeding one thousand dollars, and that the imprisonment shall be inflicted only in case the fine of one hundred dollars or more is not satisfied by payment. It is prohibitive of a sentence to pay less than one hundred dollars. If the judgment as to the fine be invalid, so is the judgment as to the imprisonment—since the latter is only alternative.

It is urged that petitioner can not be heard to object to a judgment which imposes a less penalty than that prescribed by law, and—if the action of the court was merely erroneous—it is undoubtedly correct to say that we ought not to listen to his complaint. Although when error is shown injury will be presumed, this court will not, on appeal, reverse a judgment for error, unless the defendant appealing has been prejudiced. (*People* v. *Turley,* 50 Cal. 469 ; *People* v. *Ybarra,* 17 Cal. 171.)

Of the cases cited by the District Attorney to the point that a defendant can not have a judgment reversed which is more favorable to himself than is authorized, it may be remarked that nearly all of them were *appeals*. There can be no doubt of the correctness of the proposition wherever the lower Court had *jurisdiction* to render the judgment appealed from. In *Ooton* v. *The State,* 5 Ala. 464, the question of the jurisdiction of the lower Court was not considered by the Supreme Court, nor called to its attention. In *Barada* v. *The State,* 13 Mo. 94, there was an intimation that the Court below *had* jurisdiction, in a proper case, to enter the judgment appealed from. In *Logan's Case,* 5 Gratt. 692, a prisoner had been adjudged to be confined in the penitentiary for two years. The law authorized an imprisonment of not less than five years. On suggestion of error on the face of the record, the Court which had tried the prisoner adjudged him to be confined *three years* in addition to the two years. A *writ of error* was refused by the Supreme Court of Virginia.

It is said by Hurd, in his work on *Habeas Corpus,* p. 334: " Where a prisoner was sentenced to the penitentiary, on conviction for horse-stealing, for one year, the law requiring a sentence for such offense for a period not less than three years, the error was held to be no ground for discharge on *habeas*

*corpus.*" The case referred to by Mr. Hurd—*Ex parte Shaw,*
7 Ohio St. 81—would seem fully to support his statement.
But an examination of the case will show the decision to have
turned upon the assumption that the judgment was not *void,*
because the Court had jurisdiction over the person of the de-
fendant, and over the offense and its punishment—a test which
has been held not infallible by the Supreme Court of the
United States.

With respect to the case now before us, it is indeed true
that the Police Court had jurisdiction over the person of the
petitioner and of the offense for which he was tried. " It by
no means follows that these two facts make valid, however
erroneous it may be, any judgment the Court may render in
such case. If a Justice of the Peace, having jurisdiction to
fine a defendant for a misdemeanor, should render a judgment
that he be hung, it would simply be void. Why void? Be-
cause he had no power to render such a judgment. So, if a
Court of general jurisdiction should, on an indictment for
libel, render a judgment of death or confiscation of property,
it would, for the same reason, be void. Or if on an indict-
ment for treason the Court should render a judgment of at-
taint, whereby the heirs of the criminal could not inherit his
property, which should by the judgment of the Court be con-
fiscated to the State, it would be void as to the attainder,
because in excess of the authority of the Court, and forbidden
by the Constitution." (*Ex Parte Lange,* 18 Wall. 176.)

In *Bigelow* v. *Forrest,* 9 Wall. 339, it was held that a decree
under confiscation acts, which in terms ordered *all* the estate
of the defendant (a *fee simple*) to be sold, was not simply
erroneous, but *void.* The Supreme Court of the United
States said : " Doubtless, a decree of a Court having jurisdic-
tion to make the decree can not be impeached collaterally,
*but under the Act of Congress the District Court had no
power to order a sale which should confer upon the pur-
chaser rights outlasting the life of French Forrest.*"

In the case of the present petitioner, the Police Court had
no power to impose a fine of less than one hundred dollars,
or any imprisonment except as an alternative or substitute
for a fine of one hundred dollars or more. In rendering the

judgment, it transcended its jurisdiction. The petitioner can not be deprived of his liberty by means of a void judgment.

It might be admitted that where the law authorizes either one of two distinct kinds of punishment, and a judgment imposes both, the defendant may, by satisfying one of the punishments, relieve himself of the other; and that he will be protected by the constitutional principle, "no man shall be twice punished for the same offense," from any subsequent attempt of the same Court to render the judgment which would originally have been the proper judgment. (*Ex parte Lange*, 18 Wall. 176.) But it would not necessarily follow, from this admission, that if an inferior Court should enter a judgment of imprisonment for a longer term, or fine in a larger sum, than *it had power or jurisdiction to impose* the judgment, as against the objection of defendant, would be valid *pro tanto*. In Michigan, a Justice of the Peace entered a judgment: "The defendant is fined eight dollars, to pay costs, etc.,  *  * and to stand committed until paid." The Supreme Court, after referring to the statute, said: "The Justice can fine or imprison, or can in his discretion do both, within the limits fixed by the statute; but he can not imprison for an indefinite period of time. The period must de determined and fixed by him judicially, and that, under the statute, can not exceed a period of *three months*." True, that was an appeal, but the judgment was held to be erroneous, *because* the Justice had no power to pronounce it. It was, therefore, *void*. The case was so understood by Mr. Hurd. (See Hurd on *Habeas Corpus*, 334.

*Gurney* v. *Tufts*, 37 Me. 130, was presented to the Supreme Court of Maine on a return to a writ *de homine replegiando*. The statute authorized a magistrate to sentence the owner, etc., of liquors, "to stand committed for thirty days in default of payment" (of a fine). A municipal judge had sentenced a defendant to pay a fine of twenty dollars, and that the keeper of the jail keep him, etc., "until he perform said sentence or be otherwise discharged in due course of law." The Supreme Court said: "The magistrate had clearly no authority  * * * to impose any such sentence, or to commit for a failure to comply therewith." And the petitioner (the subject of the sentence) was discharged. It is hardly necessary to add that

if the judgment is one which the court has no *power* to pronounce, the constable or other executive officer of the Court can not use it as an *ægis* for his protection. *Robinson* v. *Spenceley* was an action of *trespass* against a magistrate, which was only maintainable in case his judgment was *void*. (3 Barn. & Cress. 658.) It was said by Abbott, C. J.: "I am of opinion that the warrant in this case was illegal, not being such as the Justice had *authority* to make. It was his duty to have pursued the words of the statute. If he had so done, it would have given the party committed the option either of paying the money, or of staying three months in prison and being thereby altogether discharged from the payment. This warrant is for his imprisonment until he shall pay the money, etc. *People* v. *Riley,* 48 Cal. 549, was an appeal. The offense for which the defendant was tried was punishable by imprisonment for a term not exceeding five years. The Court below adjudged the defendant to suffer imprisonment for a term of ten years. This Court reversed the judgment and remanded the cause, with directions to the lower Court "to proceed to judgment." In none of these cases was it suggested that the sentence was good *for the statutory term.* Nor, if an inferior Court has exceeded the fine it is authorized to impose by law, would it seem that the judgment is valid to the extent of the fine authorized. To justify under a judgment, it must appear that the Court had power to render the judgment *when it was rendered.* Its validity cannot depend upon the happening of a subsequent event, as that the defendant shall subject himself to *part of a single punishment.*

But it is not necessary here to decide whether a fine in a *greater* sum than that authorized by statute or ordinance would render a judgment absolutely void. The judgment of the Police Court in the case before us is certainly void, because it is not one which *includes* any judgment which that Court has jurisdiction to render in such a case.

It has been suggested that the letting to hire of a *pool-table* is the carrying on of a species of gambling or immoral pursuit; while the statute only permits the Board to license callings, etc.—" not prohibited by law." We do not take judicial notice that " pool " necessarily involves gaming for money or value; indeed, are able to discover no reason why it should. Even

if the expression "not prohibited by law" means more than *statutory* law, we know that no statute prohibits a game not played for value, and are equally certain that such game violates no common-law prohibition.

It has been suggested, further, that the Board of Supervisors—authorized to license "callings, trades, and employment" only—had no power to impose a license tax upon the proprietor of a pool-table simply because he did not keep it exclusively for "family use," but permitted persons visiting his saloon to use it without cost; that the ordinance is invalid because it does not require, as a condition to a license, that the table shall be kept as a *calling* or *employment;* that it was let to hire or made a means of profit. But that the ordinance only requires those who make a "business, calling, or employment" of keeping a pool-table to pay a license, is sufficiently apparent from its language. As much would seem to be implied from the very exception "not kept exclusively for family use." The second section of Order 1589, however, makes the meaning manifest. It provides: "It shall be unlawful for any person to engage in or carry on any *business, trade, profession,* or calling * * * without first taking out or procuring the license," etc. The *tenth* section contains a schedule of the rates of license to be paid by persons carrying on certain businesses, trades, professions, or callings—among whom are the proprietors of pool-tables not kept for family use, the keepers of "common ball-rooms," "shooting-galleries," etc. In several instances no reference is made to the circumstance that the "business" specified must be conducted for profit. But from the nature of the subject, the purpose—to secure revenue from trades, etc.—for which the ordinance was adopted, from the very definition of the word "license," as well as from the language of the second section in connection with the enumeration of callings, etc., in the *tenth,* it is apparent that the prohibition (except license is paid) relates to and includes only the businesses, trades, professions, or callings carried on for profit. Indeed, that not conducted with a view to its profit, real or expected, would *hardly be* a business, trade, profession, or calling.

To conclude: while we hold the ordinance to be valid, we decide the judgment of the Police Court *void.*

It may perhaps be suggested that petitioner should have been remanded to the custody of the Sheriff, to be by him held under the warrant of arrest issued upon the complaint. The record shows no warrant or service, nor, if there was any warrant, that it was served by the Sheriff. The warrant, if any, may have been served by an officer of the municipal police, and petitioner may have been in *his* hands until delivered to the Sheriff after judgment. But if it appeared that he was originally arrested by a Sheriff's officer, this circumstance ought not to be determinative of the question. The Sheriff now has the body of petitioner as jailer, not in his capacity as arresting officer. This is not a case in which a party is held under illegal restraint, and another person, or the same in a distinct capacity, is legally entitled to his custody. Here the warrant (if any was issued) has discharged its function. Its office was to give to the Court, by its officer unless bail was given, the control of the defendant arrested, that he might be tried and be present for judgment and execution. When a judgment was pronounced, the Court took the defendant from the sureties, or Sheriff, as the case might be, and placed him in jail. As the sureties on the bail bond would be discharged when a judgment was rendered—although not such a judgment as would authorize the jailer to keep the defendant in prison—because the law does not intend that the liability of the sureties shall depend upon the validity or invalidity of the judgment; so the arresting officer, as arresting officer, is fully protected by a judgment of the Court of which he is the minister—whether the Court regularly pursues its jurisdiction in rendering the judgment or not—from the time that he surrenders the person of his prisoner in accordance with the terms of the judgment.

If this were an *appeal* from the judgment of the Police Court, and this Court had jurisdiction of the appeal, we might remand the cause, with direction that defendant be sentenced—the judgment appealed from being *void*. (*People* v. *Riley, supra.*) We may suggest that judgment may be pronounced upon petitioner (who has been tried and convicted by a Court of competent jurisdiction but never sentenced), *unless*, by reason of lapse of time, it would be error now to sentence him. (P. C., § 1449.) But, as we can not com-

mand such action, we ought not to permit the petitioner to remain in jail upon the *conjecture* that the Court which pronounced the judgment (believing that it had power to pronounce it) may become convinced of its invalidity—perhaps after the expiration of the period of illegal imprisonment—and then proceed to fine or imprison him a second time for the same offense.

We are strengthened in our conviction by the circumstance that never, so far as the reported cases are known to us, has it been held, where the return has shown the petitioner to be confined under a void judgment of a Court which had jurisdiction to try him, that he was or could be legally restrained of his liberty under the warrant issued at the commencement of the proceedings against him.

The petitioner is discharged from custody.

McKEE and Ross, JJ., concurred.