[Crim. No. 6455. In Bank. July 24, 1959.]

THE PEOPLE, Respondent, v. ROBERT THOMAS, Appellant.

524

Spiegel, Turner & Wolfson and Gerald G. Wolfson for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, Elizabeth Miller and David B. Allen, Deputy Attorneys General, for Respondent.

SCHAUER, J.—Defendant appeals from an order denying his motion (1) to vacate a judgment, rendered in the afternoon of April 7, 1958, which sentences him to state prison and (2) to reinstate a county jail sentence announced in the morning and "rescinded" in the afternoon of that day. He contends that the judgment is void under the italicized portion of the following rule stated in *People* v. *McAllister* (1940), 15 Cal.2d 519, 526 [2] [102 P.2d 1072] (the bracketed numbers are inserted for convenience of subsequent reference.) : "[1] If the sentence has been entered in the minutes of the court, or [2] *if the defendant has begun serving said sentence* or [3] *has been restrained by the sentence* imposed, then *the court is without jurisdiction to* vacate, add to, or in any manner *modify the sentence* originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of

said sentence, then it is proper for the court to change the sentence originally pronounced.'' (Italics added.)

The People urge that the order denying defendant's motion is not appealable because his contention could have been raised by appeal from the judgment of conviction. Also they urge that clause [2] of the rule stated in the McAllister case is not applicable to the facts of this case, and that literal application of clause [3] would give defendant the undeserved benefit of a technicality which did not prejudice him.

For the reasons hereinafter stated we have concluded that the order is appealable. Consideration of the merits of the appeal leads to the further conclusion that the superior court had power to set aside the jail sentence and impose the prison sentence and that it did not err in the exercise of such power.

Defendant was charged with possession of heroin in violation of section 11500 of the Health and Safety Code and with having suffered a previous conviction of violating the same section and having served a state prison term therefor: He pleaded not guilty and he and counsel for both parties waived a jury trial. Defendant was tried in a Santa Monica Department of the Los Angeles County Superior Court. On March 17, 1958, the court found him guilty of the substantive offense, received in evidence a certified copy of the record of his prior conviction and imprisonment, and continued the question of disposition of the allegation of such prior conviction to April 7, 1958, the date set for hearing on defendant's application for probation. Defendant was remanded without bail and confined in the Los Angeles County main jail. (This jail, and the main office of the county clerk where judgments of all Los Angeles Superior Courts are entered, are in the Civic Center, City of Los Angeles. As will appear, the facts of geographical distance between the sentencing court and courtroom clerk on the one hand and the main jail and clerk's office on the other hand have practical relation, in circumstances such as those here, to the determination of the time when the court loses jurisdiction to change a valid sentence.)

On the morning of April 7 a deputy sheriff brought defendant from the Los Angeles jail to the Santa Monica court. Without mention of the previous conviction (and therefore without determination of the issue of fact which had been reserved for decision at this time) the court denied probation and sentenced defendant to six months in jail. A notation

of this sentence was made by the clerk in what he termed his "rough notes" but such sentence was not entered in the minutes. A deputy clerk who acted as the courtroom clerk's assistant prepared a remanding order, directed to the county sheriff, which states: "The court having remanded the above named defendant, you are now authorized to hold said defendant pending such further disposition as the court may order"; "No Bail"; "6 Months County Jail." The deputy sheriff *began* the transportation of defendant back to the jail. We assume that the remanding order went with them.

The courtroom clerk testified, at the hearing on the motion to vacate, that "[O]n April 7th, which is Monday, our criminal calendar day, we normally have fifty, sixty, or even more cases, and in the press of the morning, no one . . . caught the fact that the prior had not been disposed of [until after the deputy sheriff had left with the defendant, but] . . . As I was about to prepare the minutes from my rough notes to be transmitted to the Criminal Division of the County Clerk's Office [in the Civic Center, City of Los Angeles], I noticed that a prior had not been disposed of on Robert Thomas." The clerk called the omission to the attention of the prosecuting attorney, defendant's counsel, and the judge, all of whom were still in the courtroom or chambers, and telephoned the sheriff's office and asked that defendant be returned to the Santa Monica court as soon as he arrived at the jail.

Defendant reached the jail at 3:15 p. m. and was checked out for return to court at 3:35 p. m. At 3:39 p. m., after defendant had left the jail, the above described remanding order was received at the sheriff's booking office of the jail. Thus defendant, so far as the sheriff's records disclose, was at no time held in the jail in service of the jail sentence which had been pronounced at the morning session of the court.

At 4:50 p. m. defendant, with counsel, again appeared in the Santa Monica court. The court stated, "This morning . . . , through the busyness of the calendar, I overlooked the fact that this defendant had a prior narcotics conviction." (Inferentially, the judge meant that he had overlooked disposing of the *allegation and issue* as to the prior conviction.) Defendant admitted that he had suffered the prior conviction (sale of marijuana) and that he was "presently on parole" therefor. The court announced, "The sentence this morning is rescinded" and sentenced defendant to prison, with the

finding that the alleged prior narcotics conviction is true.[1]
Judgment reciting this finding and imposing the prison sentence was entered in the minutes. Two weeks after the time for appeal from the judgment had passed, defendant, through new counsel, noticed the motion above described and, as stated, he now appeals from the order denying such motion.

To the statutory rule that "An appeal may be taken by the defendant . . . from any order made after judgment, affecting the substantial rights of the party" (Pen. Code, § 1237, subd. 3), there is a well established qualification upon which the People rely: Ordinarily no appeal lies from an order denying a motion to vacate a judgment of conviction on a ground which could have been reviewed on appeal from the judgment. (*People* v. *Bowles* (1933), 135 Cal.App. 514, 516 [3] [27 P.2d 411]; *People* v. *Zolotoff* (1941), 48 Cal.App. 2d 360, 363 [1] [119 P.2d 745]; cases announcing this qualification and exceptions to it are collected in 7B McKinney's New Cal. Dig. (1958), Crim. Law, § 1053(2).) In such a situation appeal from the judgment is an adequate remedy; allowance of an appeal from the order denying the motion to vacate would virtually give defendant two appeals from the same ruling and, since there is no time limited within which the motion may be made, would in effect indefinitely extend the time for appeal from the judgment. (*People* v. *Carkeek* (1939), 35 Cal.App.2d 499, 505-506 [96 P.2d 132].) The considerations are the same whether the matters sought to be presented by motion to vacate actually were presented to the trial court prior to judgment of conviction, or whether such matters should have been but were not so presented. (See *People* v. *Reid* (1924), 195 Cal. 249, 256, 260 [7] [232 P. 457, 36 A.L.R. 1435]; *People* v. *Shorts* (1948), 32 Cal.2d 502, 514, 515 [197 P.2d 330].[2])

---

[1]The punishment for one who, like defendant, is convicted of possessing a narcotic with such a finding of a former conviction is confinement in state prison for not less than two years nor more than 20 years. (Health & Saf. Code, § 11712.)

[2]The Reid and Shorts cases, and some of the other cases hereinafter cited, are usually indexed, in digests and texts, under "*coram nobis*" rather than under "*motion to vacate.*" In this state the writ of error *coram nobis*, when sought in the trial court, is a court-made remedy adapted from the common law; it is in effect a motion to vacate the judgment and can appropriately be so designated. (*People* v. *Vernon* (1935), 9 Cal.App.2d 138, 140-141 [2] [49 P.2d 326]; *In re Paiva* (1948), 31 Cal.2d 503, 510 [190 P.2d 604].)

The Legislature drastically changed the nature of *coram nobis* and motion to vacate the judgment by its 1949 amendment of Penal Code, section 1265, to provide that when a judgment of conviction has been

Defendant relies upon *People* v. *Walker* (1901), 132 Cal. 137, 141-142 [64 P. 133], and *People* v. *Miller* (1934), 140 Cal.App. 241, 242-243 [35 P.2d 229], which allowed the remedy of motion to correct the minutes and vacate the judgment of conviction, and appeal from the ensuing order of denial, because the appellate courts concluded that, in the circumstances there present, an appeal from the judgment would have afforded no relief for it would not have brought up a record showing the error of which defendant complained.

■ Here, defendant asserts, the question whether the trial court had jurisdiction to vacate the jail sentence and impose the prison sentence could not have been reviewed on appeal from the judgment imposing the latter sentence because the record on such an appeal would not have disclosed the fact, essential to his presentation of such question, that after pronouncement of the jail sentence and before pronouncement of the prison sentence defendant had actually been in jail. This fact, however, was known to all concerned at the time the jail sentence was "rescinded." Defendant could have made the fact of record and presented his arguments concerning its effect to the trial court before it pronounced the prison sentence, but he did not do so. Thus the claimed inadequacy of the remedy of appeal was not due to any deficiency in the remedy itself but rather resulted from defendant's failure to make a sufficient record in the trial court.

■ The remedy here sought is available, however, because the basis of defendant's attack on the judgment is that it is void. Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final without appeal (or even after affirmance on appeal; see *Mooney* v. *Holohan* (1935), 294 U.S. 103, 112-113 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406]; *People* v. *Gilbert* (1944), 25 Cal.2d 422, 444 [16] [154 P.2d 657]). There is sometimes uncertainty as to whether such defects should be raised by motion to vacate the judgment or by application for habeas corpus. (*People* v. *Adamson* (1949), 34 Cal.2d 320, 327 [210 P.2d 13].) But we have no doubt that a motion to vacate was a proper manner of presenting

affirmed on appeal the writ cannot be sought or the motion made in the trial court but application for the writ can be made to the affirming court. But the cases as to *coram nobis* and motion to vacate are still pertinent to our present inquiry, which concerns attack on a judgment which became final (insofar as a criminal judgment can ever become final) without appeal.

the jurisdictional problem in this case. (This procedure was accepted without question in *People* v. *McAllister* (1940), *supra,* 15 Cal.2d 519.) ▮ And when such a motion is proper the ensuing order of denial is appealable even though the facts which constitute the claimed jurisdictional defect were known to all concerned, including the trial court, when sentence was pronounced. (See *People* v. *Schwarz* (1927), 201 Cal. 309, 313 [267 P. 71]; *People* v. *Campos* (1935), 3 Cal.2d 15, 18 [43 P.2d 274].)

▮ When the question of jurisdiction is presented by motion to vacate and by appeal from the order of denial, the appellate court's determination as to the appealability of the order will ordinarily depend upon its decision of the merits of the appeal, i.e., upon its determination whether there was indeed a jurisdictional defect. But where, as here, the appellant in good faith presents serious jurisdictional problems, we think it is appropriate, not to dismiss the appeal, but rather to affirm the order appealed from with a statement that our action in this regard is not to be considered general authority for the appealability of an order which denies a motion to vacate a judgment on grounds which could have been presented on appeal from the judgment. (See *People* v. *Ramirez* (1934), 139 Cal.App. 380, 384 [33 P.2d 848].)

We now turn to the question whether the trial court lacked jurisdiction to vacate the first and impose the second sentence. In the McAllister case (1940), *supra,* 15 Cal.2d 519, and in this case, the jurisdictional problem, as limited by the facts, is that of the trial court's power, after rendition of judgment,[3] to change a valid sentence[4] so as to increase the punishment.[5] The holding of the McAllister case is that the trial court could change the originally announced sentence; that holding was based on the facts that, at the time of change, [1]

[3]In a California criminal case, judgment is rendered when sentence is orally announced. (See Pen. Code, § 1202; *People* v. *Terrill* (1901), 133 Cal. 120, 123 [65 P. 303]; *People* v. *Camp* (1919), 42 Cal.App. 411, 422 [183 P. 845].)

[4]The jail sentence here was valid. (See *People* v. *Burke* (1956), 47 Cal.2d 45, 50-53 [301 P.2d 241] [sentencing court could strike prior conviction]; *People* v. *Schneider* (1939), 36 Cal.App.2d 292, 297 [8] [98 P.2d 215] [failure to find on prior conviction amounts to sentencing defendant as first offender].)

[5]Literal application of the McAllister rule would forbid mitigation of punishment in circumstances where mitigation is otherwise proper. (*United States* v. *Benz* (1931), 282 U.S. 304, 307 [51 S.Ct. 113, 75 L.Ed. 354]; see also *Yates* v. *United States* (1958), 356 U.S. 363, 366 [78 S.Ct. 766, 2 L.Ed.2d 837]; *City of Vernon* v. *Superior Court* (1952), 39 Cal.2d 839, 843 [3] [250 P.2d 241].)

such sentence had not been entered in the minutes, and defendant McAllister [2] had not begun to serve the sentence and [3] had not been restrained by it.[6] The rule announced in McAllister and quoted *ante* was, therefore, in part dictum. But the dictum was not gratuitous; it was the statement of the reasons for not applying previous decisions, marshaled in the opinion, to preclude the proper change of McAllister's sentence.

Clause [1] of the rule stated in McAllister and quoted *ante*, pp. 524-525 is the California version, adapted to the operation of our courts (which, since adoption of our 1879 Constitution, no longer have terms), of the common law rule that ordinarily a court can change its judgment during the term at which it was rendered but not thereafter. (See *Ex parte Monckros Von Vetsera* (1907), 7 Cal.App. 136, 138 [93 P. 1036]; *Commonwealth* v. *Weymouth* (1861), 2 Allen (Mass.) 144 [79 Am. Dec. 776].)

Here, as in the McAllister case, page 527 of 15 Cal.2d, we are not confronted with any problem of asserted failure by the clerk to perform his duty of entering the judgment "within a reasonable time"; "Usually the practice of the courts of this state is for the clerk to make up his minutes following the adjournment of the court for the day. [Concerning a related problem of *entry* as distinguished from *making up* the material to be entered, in a large county, see *Wilson* v. *Los Angeles County Employees Assn.* (1954), 127 Cal.App.2d 285 [273 P.2d 824].] It is not necessary for us to pass upon the question as to what is a reasonable time for the clerk to perform this duty as we are satisfied that in this case when the two acts of the court occurred on the same day, no duty was imposed upon its clerk to enter the first sentence of the court before adjournment of the court for that day."

▆ Clause [2] of the McAllister case, quoted *ante*, pp. 524-525, represents a familiar rule, said to be in accord with the "weight of authority" in this country (see annotation (1947), 168 A.L.R. 706; 5 Wharton's Criminal Law and Pro-

---

[6]In the morning of March 2, 1936, McAllister was sentenced to pay a fine in installments commencing June 1. In the afternoon of March 2, before this sentence had been entered in the minutes, it was changed to provide for the alternative of imprisonment in the event the fine was not paid. It is apparent that at the time of the alteration McAllister had not begun execution of and had not been restrained under the original sentence. (*Cf. In re Garrity* (1929), 97 Cal.App. 372, 376 [2] [275 P. 480].)

cedure (Anderson, 1957), § 2191), that after execution of a valid sentence has commenced, the court cannot change it so as to increase punishment, even though the original sentence was erroneous and even though it had not been finally made of record at the time of the attempted change. Such alteration of sentence is forbidden, the United States Supreme Court says, "not . . . upon the ground that the court has lost control of the judgment . . . , but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' " (*United States* v. *Benz* (1931), *supra*, 282 U.S. 304, 307; see *Ex parte Lange* (1873), 18 Wall. (U.S.) 163, 168, 173 [21 L.Ed. 872]; *In re Bradley* (1943), 318 U.S. 50, 52 [63 S.Ct. 470, 87 L.Ed. 608]; *Bozza* v. *United States* (1947), 330 U.S. 160, 167, footnote 2 [67 S.Ct. 645, 91 L.Ed. 818].)

█ But constitutional double jeopardy, whatever the stage of the proceeding, should be a substantial rather than a mechanical concept. (See Bradley dissent, p. 53 of 318 U.S.; comment (1948), 36 Cal.L.Rev. 431.) █ Here defendant was not in any substantial sense punished under the jail sentence by being transported to, and at once returned from, the jail. The lapse of a few hours between the pronouncement of the original sentence and the pronouncement of the corrected sentence could not have prejudiced defendant. It would be absurd to speculate that he might have arrived at state prison at a substantially earlier date, so as to start the running of time toward his eventual release (under Pen. Code, § 2900), if he had been sentenced to prison in the morning rather than in the afternoon.

█ Nor does it appear that defendant had begun service of the county jail sentence under tests which have been suggested in answer to the question "What constitutes commencement of service of sentence, depriving court of power to change sentence" (annotation (1945), 159 A.L.R. 161). So far as we have discovered this question has not been previously discussed in the California reports. In other jurisdictions it has been said generally that the test is whether "the prisoner has actually passed from the control of the court into the control of the executive" (*Cisson* v. *United States* (1930, C.C.A.4), 37 F.2d 330, 332 [5]). A California defendant sentenced to county jail does not mechanically

pass from the control of the court to the control of the executive, for the sheriff is both a ministerial officer of the court for the purpose of keeping defendant until service of sentence begins (Pen. Code, § 4000, subd. 2; Gov. Code, §§ 26603, 26605, 26611) and also the executive officer who executes the jail sentence (Pen. Code, § 4000, subd. 4). Particular tests which the courts of other jurisdictions have thought might govern the end of the sentencing court's power are not here applicable. There is no California statute defining the point of beginning of a county jail term for the guidance of the sheriff and the prisoner in computing its end (*cf. Oxman* v. *United States* (1945, C.C.A.8), 148 F.2d 750 [159 A.L.R. 155, 160]; Pen. Code, § 2900). ▮ And a court-made rule that the prisoner passes from the control of the court when he is delivered, with a commitment paper, to an executive officer, or "when the prisoner is delivered into the custody of the officer at the prison where the sentence is to be served" (*Hynes* v. *United States* (1929, C.C.A.7), 35 F.2d 734, 735) would not apply here because, as we have stated, the jail records show that defendant had been removed from the jail for change of sentence before the remanding order had been made of record at the jail booking office.

▮ Furthermore, under California procedure, after pronouncement of a judgment of imprisonment the sheriff continues to detain the prisoner, whether or not such officer has a copy of a paper stating that the prisoner is to be held under such judgment, until he is discharged in legal manner. E.g., the sheriff here held defendant under the remanding order which noted the county jail sentence that had been pronounced; if no such remanding order had been made, the sheriff would have continued to hold defendant under the prior order which remanded him without bail pending the probation and sentence hearing; even if a judgment invalid on its face had been entered, as in *Ex parte Walker* (1901), 132 Cal. 143, 144 [64 P. 135] (*cf. Ex parte Bernert* (1881), 62 Cal. 524, 533-534), the sheriff could have held defendant under the original commitment by the magistrate and the subsequent superior court proceedings had prior to judgment.

If throughout the day when the sentence of this defendant was changed, the sheriff, because of administrative problems connected with transportation, had continued to hold defendant in Santa Monica, where the sentencing court sat, it seems clear that defendant would have remained in the power of the court, exercised through its ministerial officer, the

sheriff. ▇▇▇ In the circumstances here presented we think that the sheriff, in moving defendant about the county, and into and out of the jail, under an order which authorized him "to hold said defendant pending such further disposition as the court may order," continued to act as an officer of the court restraining defendant for the court and did not begin to act as an executive officer carrying out execution of a sentence which had not yet been entered in the minutes.

▇▇▇ But, defendant says, he was "restrained" under the original sentence, and clause [3] of the McAllister rule (p. 526 [2] of 15 Cal.2d) states that "if the defendant . . . has been restrained by the sentence imposed, then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced." This clause [3] was stated to comprehend two decisions (*In re Sullivan* (1906), 3 Cal. App. 193, 197 [84 P. 781]; *In re Garrity* (1929), *supra*, 97 Cal.App. 372, 375), relied upon by the defendant McAllister, which said that "The moment legal restraint was imposed as a means of enforcing the payment of the fine, that moment the execution of the judgment was commenced, and the power of the court was then exhausted, and its jurisdiction to recall, annul, or change its judgment was at an end."

That statement was not necessary to the Sullivan and Garrity decisions that the second sentences there attacked were invalid.[7] We have already seen that the statement as

_____

[7] In the Sullivan case it is implicit from, although not expressly noted in, the opinion that the sentencing court attempted to change a judgment which had been entered in the minutes, for on the day the original judgment was pronounced a commitment in regular form under seal of the court issued; that commitment, presumably, was the "certified copy of the entry thereof upon the minutes" required by Penal Code, section 1213, as it then read. Furthermore, in Sullivan's case there was a substantial double punishment problem. His original sentence was to pay a $700 fine, with an invalid, severable provision that if the fine was not paid it should be satisfied by imprisonment in the state prison at the rate of $2.00 per day. After Sullivan had been restrained for five days of "dead time" by the sheriff, who was holding him for delivery to state prison, the court attempted to change the sentence by providing for satisfaction of the fine by imprisonment in the county jail at the rate of $2.00 per day. Manifestly, Sullivan suffered five days' restraint which should have been but were not credited toward satisfaction of his fine.

At the time of the questioned change of sentence as to one of the several counts on which Garrity had been convicted, an application for probation was pending and he had not been committed to the service of any term of imprisonment in execution of judgment on any count. Judgment originally was pronounced on October 31, 1928, and as to the questioned count was for fine only. Concerning the subsequent (or resumed) proceeding on December 6, 1928, the minutes stated, "by

to restraint was dictum as applied to McAllister, who was originally sentenced only to pay a fine. The McAllister dictum of clause [3] has been repeated, still as dictum, in the cases of *In re Pedrini* (1949), 33 Cal.2d 876, 878-890 [1] [206 P.2d 699]; *People* v. *Kersten* (1943), 59 Cal.App.2d 172, 173-174 [1] [138 P.2d 780]; *People* v. *Williams* (1949), 93 Cal.App.2d 777, 779 [1] [209 P.2d 949]; and *In re Graham* (1958), 160 Cal.App.2d 845, 846 [1] [325 P.2d 499]. Also the Sullivan and Garrity cases and *People* v. *Ysabel* (1938), 28 Cal.App.2d 259, 261 [4] [82 P.2d 476], and *In re Fontino* (1933), 135 Cal.App. 466, 468 [2] [27 P.2d 413], suggest that the sentencing court exhausts its jurisdiction by announcing judgment, i.e., by simply speaking, no matter how inadvertently or erroneously. Those cases, in our opinion, were manifestly not intended to have the absurd and injurious consequence of precluding a trial judge from timely correction of either a slip of the tongue or an announcement of sentence which is based on a mistake of fact or law, which has not become of record in the minutes, and which has not affected the defendant. Such dicta, insofar as they suggest a result contrary to that reached here, are disapproved. *People* v. *Reimringer* (1953), 116 Cal.App.2d 332, 343 [19] [253 P.2d

stipulation, matter of probation and sentence is reopened," and the court ordered that if the fine was not paid by December 20 defendant should be remanded to jail to satisfy the fine at a stated rate. From the December 6 minute order recording a stipulation that the matter of sentence be "reopened," the District Court of Appeal perhaps inferred, notwithstanding the pendency of the probation hearing, that the matter as to the one count had been "closed"; and the McAllister case (p. 524 of 15 Cal.2d) says, "It can hardly be assumed that during . . . a period of over five weeks, the first sentence had not been entered by the clerk in the minutes."

It may be noted that the Garrity decision was reached notwithstanding the fact that the pendency of the probation proceeding was recognized. The appellate court stated (p. 373 of 97 Cal.App.): "Although the record herein does not disclose the fact, it is conceded by respective counsel that at the time of the conviction of the defendant of the said crime of conspiracy he was also convicted of the commission by him of certain other offenses, as to which, under certain specified conditions, the execution of the judgment was suspended; that after judgment had been pronounced by the trial court, and pending an investigation relative to a decision by the trial court as to whether 'probation' (or suspension of the judgment) should be granted to the defendant as to his conviction of the charge of conspiracy [to violate the Corporate Securities Act], a stipulation was entered into between counsel respectively representing the defendant and the prosecution to the effect that a delay by the trial court beyond the statutory period in reaching a conclusion as to the matter of 'probation' for the defendant, would in nowise affect the power of the court in the premises."

756], upon which defendant relies, rests entirely upon a statute and is not relevant to the problem before us.[8]

 It is further to be observed that the trial judge here, on March 17, 1958, after finding defendant guilty on the substantive charge, expressly continued disposition of the allegation of the prior conviction and of defendant's application for probation to April 7. In this regard the reporter's transcript shows the following: ''THE COURT: So far as the priors on both of them [a codefendant was being tried jointly with appellant] are concerned, they are submitted for disposition to the time of the hearing on probation, and the hearing on probation will be April 7th as to each

[8]In the Reimringer case the trial court's originally entered judgment provided, ''Sentences on counts 2, 3 and 4 to run consecutively to sentence on count 1; the sentence on count 5 to run concurrently with count 1.'' More than a month later, outside the presence of defendants and after they had begun to serve time, the court entered an amended judgment which specified ''that the second count was to be served after the first, the third after the second, the fourth after the third all consecutively, the fifth concurrently with the first.'' (P. 342 of 116 Cal.App.2d.) Whether the trial court had intended by the language it used on the first occasion to impose the same sequence of terms which it delineated in the later pronouncement does not appear, but the construction which the District Court of Appeal placed on the trial court's judgment, together with the ground for the appellate court's holding, are clearly stated in its opinion. The District Court (p. 343 [19] of 116 Cal.App.2d) says, ''Appellants contend that the first formulation makes counts 2, 3 and 4 run concurrently (*In re Sweet*, 113 Cal.App.2d 413 [248 P.2d 94]) whereas the new formulation makes them run consecutively. Such modifying of a judgment as to a felony cannot take place without the defendant being present (Pen. Code, § 1193, subd. 1) and cannot take place at all when the sentence has been entered in the minutes of the court or defendant has begun serving said sentence. (*People* v. *McAllister*, 15 Cal.2d 519, 525 [102 P.2d 1072].) Respondent contends that although the original formulation showed the intention of the court that only the fifth count should run concurrently with the first, . . . there was no express determination in what manner counts 2, 3 and 4 should be served with respect to each other and that on the failure of such determination section 669, Penal Code, gave the court power to make such determination within 60 days from the actual commencement of imprisonment and in the absence of the defendant. On its face the provision relates to prior existing judgments at the time of the pronouncing of a later judgment only, but respondent relies on *People* v. *Finkel*, 94 Cal.App.2d 813 [211 P.2d 888], and *People* v. *Carr*, 6 Cal.2d 227 [57 P.2d 489], for the application of this provision also to judgments on separate counts of one information. . . . There is no reason conceivable why a different rule should apply to the correction of a failure to determine the manner in which a sentence should run with respect to a prior sentence known to the court than to the same failure with respect to the manner of running of sentences on different counts of the same judgment.

''We hold that the court had power to make the modification in the manner it did.'' (*Cf. In re Pedrini* (1949), 33 Cal.2d 876, 879 [206 P.2d 699].)

defendant. The defendants are remanded.'' The continuance as to the prior conviction, it may be inferred, was to enable the judge, after he had received the information in the probation report, to consider whether he should find the charge to be true or not true. or whether he might properly strike or dismiss the allegation of the prior conviction (see *People* v. *Burke* (1956), *supra,* 47 Cal.2d 45, 53 [301 P.2d 241]). Thus on the morning of April 7 the pronouncement of sentence was not the only function remaining for the court to perform. Before judgment could properly be pronounced an issue was to be determined. But when he pronounced the jail sentence, the judge inadvertently left open that issue, which had been raised by the information and which had previously been expressly held open for disposition at this time. We conclude that in the circumstances of this case the trial judge did not err when he recalled the defendant, vacated the county jail sentence, completed the determination of issues, and pronounced the new sentence on the afternoon of April 7.

For the reasons above stated, the order appealed from is affirmed.

Gibson, C. J., Shenk, J., Spence, J., McComb, J., and Peters, J., concurred.