[No. A053235. First Dist., Div. Four. Dec. 3, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY STEVEN KIRKPATRICK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

## COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Respondent.

---

**POCHÉ, Acting P. J.**—Defendant Randy Steven Kirkpatrick appeals from the judgment of conviction entered after a jury found him guilty as charged of possessing more than 57 grams of cocaine for sale. (Health & Saf. Code, § 11351; Pen. Code, § 1203.073, subd. (b).)

### BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VII

Defendant claims that a resentencing imposed by the trial court was in excess of its jurisdiction. The problem arose in this context:

---

*See footnote, *ante,* page 538.

Friday, June 1, 1990, was the time set for receipt of the probation officer's report and sentence. After hearing the submissions of counsel, the court noted that defendant "did serve his country in Vietnam, and he was awarded . . . a Silver Star," something "you . . . don't get . . . for washing mess tins."[2] Upon reviewing the circumstances in mitigation and aggravation,[3] the court pronounced sentence as follows: "Because of the . . . Silver Star I think that the country owes him something on that. And I'm going to make his sentence . . . the middle term" of three years. The court then proceeded to sentence a codefendant to the aggravated term of four years.

It was only when the collateral matter of defendant's possible release on bail pending appeal was being considered that the prosecutor advised the court that defendant "didn't get the Silver Star medal." After chastising the prosecutor for tardiness in raising this matter, the court stated in effect that defendant's possession of the Silver Star "was something that I counted as heavily in his favor, sufficiently so to mitigate" the aggravated term to the middle term. "If that's been misrepresented to the court, why, I missentenced Mr. Kirkpatrick." The prosecutor was advised that the court would "reopen the sentencing hearing" and "vacate the sentence" when presented with proof that defendant had not been awarded the Silver Star.

On Monday, June 4th, the prosecutor noticed a motion for "modification of sentence" based on his unsuccessful efforts to establish defendant's official award of the decoration, as recounted in a supporting declaration. The court issued an order to show cause.

Another hearing was held on June 18th, which commenced with the court stating that "when the sentence was announced . . . on the basis it was contingent upon Mr. Kirkpatrick having a Silver Star . . . which I hold as

---

[2]Federal law specifies that a member of the United States Army—as was defendant—may be awarded the medal if "cited for gallantry in action that does not warrant a medal of honor or distinguished service cross." (10 U.S.C. § 3746.)

The court also made reference to defendant's receipt of a Purple Heart, but it made clear that any mitigation in sentence was solely attributable to his being decorated with the Silver Star. (See fn. 4, *post.*) Defendant also erroneously claimed that he had been awarded a Bronze Star medal. A Department of Defense document discussed later in this opinion (see text preceding fn. 7, *post*) does indicate that defendant was awarded the "Vietnam Service Medal w/2 Bronze Service Stars," but this is not the Bronze Star. (See 32 C.F.R. § 578.1 et seq., especially § 578.11 ["Bronze Star Medal"].)

[3]In aggravation was the fact that the court deemed defendant "more or less the brains of whatever was going on in this drug operation . . . . He was . . . very intelligently in control, keeping his hand as far out as he could."

quite a substantial achievement."[4] After hearing argument from counsel and defendant, the court retained the opinion it announced at the outset: "As far as I'm concerned, I feel that my sentencing decision was based upon a misrepresentation." Defendant was thereupon sentenced to the aggravated term of four years.[5]

At the June 18th hearing the court was told that on June 1st—the day of the original sentencing—defendant filed a notice of appeal from "the final judgement [*sic*] of conviction rendered . . . on 1 June 1990." At this hearing on June 18th the court told defendant "I think your notice of appeal is premature because no judgment has been entered," the initial sentence being only "tentative." The abstract of judgment in the record was filed on June 25th.

There is no suggestion defendant ever took advantage of the opportunity extended by the trial court to have the modified sentence recalled if proof was adduced that defendant had in fact been awarded the Silver Star. Nor does defendant in his briefs affirmatively represent that such an award was made. We therefore take it as established that defendant is not a recipient of the medal.

■ Defendant insists that only the initial sentence is valid. He also argues that the purported resentencing is void because (1) the initial sentence had previously been entered in the minutes and (2) the notice of appeal divested the trial court of jurisdiction to modify the judgment as originally pronounced. With the greatest reluctance, we are required by binding Supreme Court precedent to concede that defendant is correct on both points.

Our first approach was to explore the possibility suggested by the trial court's comments that the initial sentence was merely "tentative," and that defendant's notice of appeal was "premature." These characterizations might bring the revised sentence before us (cf. Cal. Rules of Court, rule 2(c)), but only if the initial sentence does not constitute a final judgment.[6] This inquiry activates the first of the two operative Supreme Court rules.

More than half a century ago our highest court instructed that "If the sentence has been entered in the minutes of the court, or if the defendant has

---

[4]As the court subsequently put it to defendant: "You were convicted of a serious crime. You merited that four years [on an aggravated sentence]. The *only* reason you didn't get that was my personal feeling that anyone who had valor of such a magnitude to earn the Silver Star was entitled to something." (Italics added.)

[5]The court did advise defendant that if he presented documentation of being awarded the Silver Star, the court would recall the increased sentence and reinstate the original sentence pursuant to Penal Code section 1170, subdivision (d).

[6]Our discussion proceeds on the assumed basis that "sentence" is functionally synonymous with "judgment." (See *People* v. *Flores* (1974) 12 Cal.3d 85, 93, fn. 6 [115 Cal.Rptr. 225, 524 P.2d 353].)

begun serving said sentence or has been restrained by the sentence imposed, then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of said sentence, then it is proper for the court to change the sentence originally pronounced." (*People* v. *McAllister* (1940) 15 Cal.2d 519, 526-527 [102 P.2d 1072].) The court subsequently explained that these principles "were manifestly not intended to have the absurd and injurious consequence of precluding a trial judge from timely correction of either a slip of the tongue or an announcement of sentence which is based on a mistake of fact or law, which has not become of record in the minutes, and which has not affected the defendant." (*People* v. *Thomas* (1959) 52 Cal.2d 521, 534 [342 P.2d 889].)

By no stretch of the imagination can the initial sentence be dismissed as a mere "slip of the tongue." The trial court knew exactly what it was doing and why—granting defendant leniency in the belief that he had been awarded the Silver Star. Because that belief was erroneous, it would at first glance appear to qualify for the mistake of fact exception mentioned in *Thomas*. That exception is, however, limited to situations where a sentence "based on a mistake of fact . . . has not become of record in the minutes" (*People* v. *Thomas, supra*, 52 Cal.2d 521 at p. 534)—i.e., the sentence has not been "entered in the minutes." (*People* v. *McAllister, supra*, 15 Cal.2d 519 at p. 526.) The record on appeal does not establish whether the minutes for June 1 were entered, but the trial court clerk has advised this court that minutes for June 1 were duly entered that same day. The consequences of entry are twofold. First, the trial court thereafter lacked "jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced." (*Ibid.*) Second, because that sentence cannot be deemed tentative but is instead a final judgment, defendant's notice of appeal therefrom is proper and not premature.

The filing of that notice triggers the second principle relied upon by defendant. ■ "An appeal from the judgment . . . removes the subject matter thereof from the jurisdiction of the superior court. Pending the appeal the superior court has no jurisdiction to vacate the judgment or make any order affecting it. . . . The appeal may be subject to dismissal . . . but until it is disposed of the jurisdiction of the subject matter of the judgment is vested in the appellate tribunal." (*In re Johannes* (1931) 213 Cal. 125, 129-130 [1 P.2d 984].) There are thus two independent but related principles enunciated by our Supreme Court which sustain defendant's contention that the purported resentencing is invalid.

■ Because we are extremely unhappy with this conclusion, we have carefully examined the Attorney General's argument that it can be avoided

on the theory that the trial court was the victim of extrinsic fraud. The trial court's comments went to the brink of an accusation of fraud, although the word itself was not used. Unfortunately, the concept of extrinsic fraud has a complex meaning, akin to a term of art, that does not encompass instances where a party fails " 'to assemble all his evidence' " or "to protect himself from mistake or from any fraud attempted by his adversary." (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 473, 472 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; see *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1069 [202 Cal.Rptr. 116].) While it should in fairness be noted that the deputy district attorney who appeared at the sentencing proceedings had not participated in defendant's trial, he was not new to the case. His first involvement with the case was when he opposed defendant's motion for commitment to federal correctional custody by virtue of his (defendant's) status as a combat veteran of Vietnam. (See Pen. Code, § 1170.9.) In connection with that opposition, the deputy submitted a copy of a Department of Defense document made at the time of defendant's release from active duty with the Army. This document, which bore defendant's signature, included a box for listing "Decorations, Medals, Badges, Commendations, Citations And Campaign Ribbons Awarded or Authorized." There is no mention of a Silver Star being awarded to defendant.[7] It was this document that prompted the deputy to remark at the initial sentencing hearing that defendant "didn't get the Silver Star medal. It's clear in the particular form that I submitted to the court" in the opposition to defendant's earlier motion for federal commitment. This identical document constituted the centerpiece of the deputy's effort to have defendant resentenced.

Several conclusions are obvious. The first is that a possible discrepancy between defendant's representation and reality was known to the deputy district attorney at the time of the hearing at which the initial sentence was pronounced. The second is that this discrepancy was raised by the deputy at that hearing. The third is that nothing done by defendant prevented the prosecution from learning of the true state of affairs. Finally, it is clear that the prosecution's knowledge was no greater when the trial court subsequently purported to resentence defendant. Thus, what occurred at the initial sentencing proceeding was intrinsic fraud that the prosecution could have guarded against at that time with the information it then possessed. (See *Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467 at pp. 472-473; *In re Marriage of Stevenot, supra,* 154 Cal.App.3d 1051 at pp. 1068-1070.) We are consequently precluded from agreeing with the Attorney General that extrinsic fraud occurred.

■ This is not to say that a trial court is powerless to deal with intrinsic fraud, but only that the power must be exercised prior to events that

---

[7]Or of a Bronze Star. (See fn. 2, *ante.*)

terminate the court's sentencing jurisdiction (i.e., before entry of a sentence in the minutes and before the filing of a notice of appeal). At that time the court can vacate the sentence imposed and then (1) continue the matter until the disputed matter can be settled, or (2) as the trial court attempted to do here (see fn. 5, *ante*), sentence the defendant while reserving the option to recall and reduce the sentence if the dispute is resolved in defendant's favor. Unfortunately, neither of these courses was utilized here in a timely fashion.

The judgment of conviction, including the sentence pronounced on June 1, 1990, is affirmed. The clerk of the trial court is directed to prepare an amended abstract of judgment, and to forward a certified copy of the amended abstract to the Department of Corrections.

Perley, J., and Reardon, J., concurred.

A petition for a rehearing was denied December 26, 1991, and appellant's petition for review by the Supreme Court was denied March 11, 1992.