**OXMAN v. UNITED STATES.**

No. 13017.

Circuit Court of Appeals, Eighth Circuit.
April 23, 1945.

Writ of Certiorari Denied June 18, 1945.
See 65 S.Ct. 1569.

William H. Howery, of Kansas City, Mo., and Maxwell P. Oxman, pro se, for appellant.

Tobias E. Diamond, U. S. Atty., of Sioux City, Iowa, for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from an order entered August 29, 1944, denying appellant's motion to vacate and correct a sentence imposed upon him at Cedar Rapids, Iowa, on February 2, 1943, upon his plea of guilty to an indictment charging him and 10 others in 23 counts with use of the mails in furtherance of a scheme to defraud in violation of 18 U.S.C.A. § 338 and in one count with conspiracy in violation of 18 U.S.C.A. § 88. The order of the court granting the appeal authorized it to be presented in forma pauperis.

The indictment was returned August 20, 1942, and an order was entered on the same day fixing the amount of bail bonds for the several defendants. The appellant furnished a bail bond, but having failed to appear for trial at the time fixed therein his bond was forfeited. Thereafter he was apprehended and lodged in jail at Cedar Rapids to await trial. On February 2, 1943, the defendants, including appellant, appeared in court, the marshal having brought the appellant from the jail where he was held. The court convened at 2 o'clock P.M. and remained in uninterrupted session until approximately 8 o'clock in the evening. All the defendants entered pleas of guilty. The court heard statements of the United States attorney and of counsel for the defendants and of several, if not all, of the defendants. Sentence was first imposed upon the defendant John Factor. The judge next pronounced sentence upon appellant, sentencing him generally on all counts of the indictment to "be committed to the Attorney General or his duly authorized agents for imprisonment for a period of 6 years and pay a fine of $2500.00."

When the court proceeded to impose sentence upon the remaining defendants a deputy marshal removed Factor and the appellant to a room in the marshal's office across the hall from the court room, the door to which was locked. The room was provided with toilet facilities and was separated from the marshal's main office by iron bars. While the court imposed sentences upon the remaining defendants, appellant and Factor were permitted to visit with attorneys for some of the defendants and with Factor's wife. When the court had sentenced all the defendants the United States attorney inquired whether it was the court's intention to sentence appellant to 6 years in

the penitentiary and to pay a fine of $2500.00, whereupon the following proceedings were had:

"The Court: If I said that it was a mistake. I am depending on the records of the clerk.

"Clerk of Court, Mr. McNeeley: I understood Your Honor to say 6 years.

"The Court: Mr. Oxman should be brought back into the court room.

"Note: Mr. Oxman is returned to the court room accompanied by Deputy United States Marshal Petrus.

"The Court: The clerk of court informs me that I imposed a sentence of 6 years on you and a fine of $2500.00. If I said 6 years I made a mistake.

"If the sentence has been entered it may be vacated and set aside, and as general sentence on all Counts, it is the judgment of the court that the defendant be and he hereby is committed to the Attorney General or his duly authorized agent for a period of ten (10) years and shall pay a fine of $2500.00, and commitment in the event the fine is not paid.

"If I said six (6) years, I did not mean that, as I intended to impose the same sentence on both you and Factor, except that your fine is smaller. I am convinced that you and Factor were the dominant members of the scheme to defraud.

"Mr. Meshbesher (counsel for defendant Oxman): At this time, the defendant takes exception to the change of sentence, for the purpose of the record.

"The Court: Very well."

After these proceedings were completed, judgments and commitments were prepared and signed by the judge and all the defendants were taken to and incarcerated in the county jail to await transportation to a penitentiary to be designated by the Attorney General; and on February 4, 1943, appellant was delivered to the Warden of the federal penitentiary at Leavenworth, Kansas.

The time during which appellant remained in the room in the marshal's office was estimated by the judge to be a little more than an hour. The defendant in his motion to vacate and correct the judgment says that it was for a period of five hours. The deputy marshal testified that his reason for removing appellant during the proceedings from the court room to the marshal's office was because of appellant's request to be taken to a rest room.

After appellant's motion was filed and the date for hearing thereon had been fixed by the judge, appellant filed a motion for a "writ of habeas corpus ad prosequendum ad testificandum" asking to be brought to the court room in Cedar Rapids to testify in his own behalf at the hearing, but without stating the substance of the evidence which he deemed material. The motion was denied, and he now complains of that ruling. The complaint is without merit. Such an application is addressed to the discretion of the court and no abuse of discretion is shown. Bugg v. United States, 8 Cir., 140 F.2d 848, 850. Appellant now says that his testimony would have supported his claim that he was held in the marshal's office for five hours and that he would have contradicted the testimony of the deputy marshal to the effect that he was removed from the court room at his own request. As we shall point out hereinafter such testimony would in any event be immaterial.

Appellant's principal contention on appeal is that the room in the marshal's office to which he was removed from the court room during a part of the proceedings on February 2, 1943, is a "jail or other place of detention" within the meaning of 18 U.S. C.A. § 709a,[1] and that the time during which he was detained there was a part of the sentence first imposed upon him by the court, and that, therefore, the court was without jurisdiction to recall him and increase his sentence.

The general rule is that judgments, both civil and criminal, are within the control of the court during the term at which they are made. For that time they are deemed to be "in the breast of the

---

[1] "§ 709a. Time when sentence begins to run. The sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: Provided, That if any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention. No sentence shall prescribe any other method of computing the term. (June 29, 1932, c. 310, § 1, 47 Stat. 381.)"

court," subject to be amended, modified, or vacated. Goddard v. Ordway, 101 U.S. 745, 752, 25 L.Ed. 1046. The rule is subject to the limitation that in criminal cases a sentence "already partly suffered cannot be increased." Wharton, Criminal Pl. and Pr., 9th Ed., § 913; United States v. Benz, 282 U.S. 304, 306–7, 51 S.Ct. 113, 75 L.Ed. 354; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; Basset v. United States, 9 Wall. 38, 19 L.Ed. 548. The reason for the limitation is that to increase the sentence after it has been served in part subjects the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." A sentence may be reduced after it has been partly served, but it may not be augmented. It is not a jurisdictional but a constitutional question. United States v. Benz, supra, 282 U.S. at page 307, 51 S.Ct. 113, 75 L.Ed. 354.

The only question, therefore, that can be raised upon the record is whether the defendant was serving his sentence within the meaning of § 709a, supra, during the time he was locked in the room in the marshal's office on February 2, 1943. We think it is too clear for argument that appellant's case does not come within the plain language of the statute which provides only that when a person convicted of a crime "shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention." The appellant was not "committed" to the room in the marshal's office and he was not taken there "to await transportation" to the penitentiary where he was afterwards sent to serve his sentence. He was taken to the room by the deputy marshal without a commitment either at his own request or to wait until his co-defendants had received their sentences and a commitment could be issued so that all the defendants pleading guilty and receiving sentences under the same indictment could be committed to the county jail to await transportation to a penitentiary to be designated by the Attorney General. De Maggio v. Coxe, 2 Cir., 70 F.2d 840; Rowley v. Welch, 72 App.D.C. 351, 114 F.2d 499, 503.

Appellant filed a brief pro se in this court; and the court appointed Mr. William H. Howery, a member of the bar, to represent him on this appeal. Mr. Howery presented the case orally and filed a brief evidencing great industry on his part. Numerous cases are cited in both of the briefs illustrating the constitutional rights of a person charged with crime and the application of § 709a to particular situations; but no case has been cited in which the statute was held to apply to the correction of a mere inadvertent error of a judge in pronouncing sentence where the correction was made before the judge left the bench and before the convicted person was actually "committed to a jail or other place of detention *to await transportation* to the place" where he was to be imprisoned. (Italics supplied.) Appellant does not claim that he was transported from the room in the marshal's office to the penitentiary. He could not start on that journey on February 2, 1943, because the Attorney General had not then designated the prison in which he was to be confined. The room in the marshal's office was not furnished with a bed or any other facilities for lodging over night. It is inconceivable that the court or marshal intended to detain him there until his journey to the penitentiary should begin. Appellant, like his co-defendants whose sentences followed his, was waiting only for the judge to complete the pronouncing of sentences upon all of them, when they would be committed to the county jail to await transportation to the penitentiary. So, it was immaterial whether the first defendants to be sentenced waited for one hour or five hours while sentence was being pronounced upon the other defendants, or whether they waited in the court room or in the marshal's office, or whether appellant was taken from the court room to the marshal's office at his own request or for convenience or because he was not at liberty on bail.

Finally, the appellant suggests that the sentencing judge should have disqualified himself upon the hearing of appellant's motion to vacate and correct sentence and that the hearing should have been before some other judge. There is no merit in the suggestion under the circumstances disclosed in the record. There is no charge of prejudice, and there is no dispute in regard to any material fact. Accepting appellant's own statement of the facts and

ignoring his conclusions, the motion was without merit.

The order overruling the motion appealed from is affirmed.