Nathaniel VINCENT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17591.

United States Court of Appeals Eighth Circuit.

Nov. 4, 1964.

Samuel Raban, St. Louis, Mo., for appellant.

John Newton, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and DAVIES, District Judge.

MEHAFFY, Circuit Judge.

The defendant was tried to a jury and found guilty under a two-count indictment and was sentenced to a term of ten years upon each count to run consecutively.

The first count of the indictment charged the defendant with unlawfully carrying a quantity of heroin from New York City to St. Louis County on September 19, 1963 in violation of 26 U.S. C.A. § 4724(b). The second count charged the receipt and concealment of the same drug on that date knowing that

it had been unlawfully imported into the United States in violation of 21 U.S.C.A. § 174.

The defendant offered no testimony in his defense and the evidence presented by the government may be briefly summarized. For several months prior to his arrest, federal narcotic agents had knowledge of the defendant's reputation for engaging in narcotic traffic. Shortly before his arrest they had knowledge that he was flying to New York once or twice a week under an assumed name for the purpose of procuring narcotics. On September 19, 1963, the day of his arrest, defendant was observed by an airline ticket agent boarding a non-step jet flight to New York City without luggage. He had purchased his ticket under the name of Jesse Cox. Narcotic agents were advised and two federal agents and four detectives from the St. Louis Metropolitan Police Narcotics Squad went to the airport to intercept defendant upon his scheduled 8:40 p. m. return to St. Louis. One of the officers had a picture of the defendant and upon their arrival at the airport they took positions which would enable them to observe the defendant when he deplaned. They did observe him as he left the plane, entered the terminal, and proceeded to walk down the concourse. Within a few feet after entering the terminal, the defendant apparently recognized one of the officers stationed nearby. The defendant continued walking but paused momentarily at a trash receptacle and was seen by two of the officers to deposit in the receptacle a small, white cubical package. Immediately thereafter these two officers went to the trash receptacle and retrieved the package deposited by defendant. The package contained 25 individual, double envelopes of white powder analyzed later to be heroin. After continuing his walk down the concourse, and nearly simultaneously with the officers' going to the receptacle for recovery of the heroin, one of the other officers arrested the defendant and took him to the men's rest room where he was thoroughly searched by the remaining officers. While this search was in progress, the two officers who retrieved the package of heroin joined the others in the rest room. No other narcotics were found on the defendant. He was taken to the St. Louis Police Headquarters for booking. He first denied any knowledge concerning the package of heroin the officers had recovered, but within ten minutes he confessed having purchased and transported the narcotics from New York as well as divulging the identity of his source. Four days later he was turned over to the federal authorities for arrest and arraignment for breach of federal narcotic laws. He was taken before the U. S. Commissioner on the day the federal authorities took custody of him, and upon being informed of the complaint and of his rights waived preliminary hearing and was released on bond.

In seeking reversal of his conviction, defendant contends that the District Court erred:

1. In changing his sentence;

2. By amending Count 2 of the indictment;

3. In failing to set aside his waiver of preliminary hearing; and

4. By admitting into evidence the narcotics and confession which were obtained as a result of an alleged illegal arrest.

When defendant was brought before the court for sentencing, the court fixed his punishment at a total of twenty-five years imprisonment. He was sentenced to twenty years on Count 1 of the indictment, five years on Count 2 to run consecutively and directed by the court to "report to the Marshal in the meantime." Immediately following sentencing, there was a conference at the bench between the court and counsel, whereupon the court instructed that the defendant be returned.

The offense under Count 1 allows a maximum sentence of ten years, and the court's twenty year sentence was excessive. Recognizing this mistake, the court recalled the defendant who had not as yet left the courtroom and resentenced

him to a maximum imprisonment of ten years on Count 1, while imposing a ten year term on Count 2, to run consecutively, for a total sentence of twenty years.

The net effect of the sentence was an over-all reduction of five years. The court, of course, properly corrected its illegal sentence insofar as Count 1 was concerned by reducing it to ten years. Rule 35 of the Federal Rules of Criminal Procedure provides that the court may *correct* an illegal sentence at any time, or *reduce* a sentence within sixty days after imposition. Orrie v. United States, 302 F.2d 695 (8th Cir. 1962), cert. denied 371 U.S. 864, 83 S.Ct. 124, 9 L.Ed.2d 101 (1962), and cases cited; Machin v. United States, 290 F.2d 621 (8th Cir. 1961).

■ Defendant contends that the sentences on the two counts were for separate, distinct offenses and that the court improperly increased the sentence imposed under Count 2 rather than validly exercising its power under Rule 35 to reduce the sentence under Count 1. He relies primarily on United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), which stands for the general proposition that the court during the term sentence was imposed may modify the sentence provided the punishment "be not augmented" after the prisoner has commenced the service of sentence. However, in the instant case the defendant had not commenced service of his sentence at the time of correction by the trial court.

18 U.S.C.A. § 3568 provides that sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory or jail for service of said sentence, and further that if such person shall be committed to jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention. Here, the defendant had not been committed to a

jail or other place of detention to await transportation to the place at which his sentence was to be served. As a matter of fact, he had only been told to report to the Marshal, and after a brief conference with counsel the court recalled defendant before the bench to correct his sentence. In Oxman v. United States, 148 F.2d 750, 159 A.L.R. 155 (8th Cir. 1945), cert. denied 325 U.S. 887, 65 S.Ct. 1569, 89 L.Ed. 2001 (1945), the defendant was sentenced to six years' imprisonment, whereupon he was taken to the marshal's office in the same building and locked up while other co-defendants were being sentenced. Sometime later in the day, after more than an hour, the trial court ordered the defendant returned to the courtroom, increasing his sentence from six to ten years. This Court there recognized that a sentence cannot be increased once service has commenced, but held that the trial court had the power to resentence the defendant increasing the severity of the sentence so long as it was done prior to commencement of service. See also Kelley v. United States, 235 F.2d 44 (4th Cir. 1956) and United States v. Byars, 290 F.2d 515 (6th Cir. 1961), cert. denied 368 U.S. 905, 82 S.Ct. 185, 7 L.Ed.2d 99 (1961), reh. denied 368 U.S. 872, 82 S.Ct. 65, 7 L.Ed.2d 73 (1961).

Because the defendant had not been transferred from the court's custody to a place of detention at the time his sentence under Count 1 was reduced and his sentence under Count 2 increased to a permissible duration, service of the sentences had not officially commenced. Therefore, defendant's rights were not impinged by the trial court's timely alteration of his sentences.

The defendant was charged in Count 1 with unlawfully carrying heroin from New York to St. Louis County and in Count 2 with the "receipt *and* concealment" of the same drug on the same date in violation of separate statutes under the respective counts. At the conclusion of the opening statement by the government attorney, the defendant moved to dismiss the two-count indictment, or, in

the alternative, to require the government to elect on which count it would proceed. Defendant argued that it was inconsistent to charge him with both the transportation of the narcotic to St. Louis County in Count 1 and a receipt from himself of the same drug at that location in Count 2.

There is no question but that Counts 1 and 2 of the indictment charge two separate and distinct offenses under different statutes. Each has different evidentiary requirements even though arising from one common transaction. Gargano v. United States, 140 F.2d 118 (9th Cir. 1944); Harris v. United States, 248 F.2d 196, 201 (8th Cir. 1957), aff'd 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959), reh. denied 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843 (1959).

The trial court dismissed that portion of Count 2 which charged defendant with the unlawful receipt of the drug. In its instruction to the jury, the court stated that it was the government's position under Count 2 that the defendant "concealed" the same drug illegally transported under Count 1 knowing that it had been unlawfully imported into the country. The effect of this instruction was, of course, to withdraw from the jury the right to convict under Count 2 for "receiving" the drug but permitted a conviction for the remaining portion of the count under 21 U.S.C.A. § 174 dealing with the unlawful concealment. There was no physical deletion of any language from the indictment nor was the indictment amended except insofar as the jury was instructed upon the government's theory of the case with respect only to the charge of "concealment".

The issue is whether the trial court improperly amended the indictment so as to permit the jury to convict the defendant on a charge for which he was not indicted. A trial court cannot amend an indictment and cause a defendant to be tried and convicted of a charge for which he was not originally indicted by the grand jury. Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

Section 174 designates the offenses separately and disjunctively. However, Count 2 charged the defendant conjunctively with "receiving" and "concealing". This count would have validly charged a single violation of § 174 without inclusion of the words "receiving and".

The court's effective withdrawal of the jury's right to convict for receipt of drugs did not broaden the charge, constitute a new charge or result in defendant's being tried under any accusation not returned by the grand jury. The grand jury indicted the defendant for "concealing" the narcotic drug, and the petit jury found him guilty of this charge. The instant case is distinguishable from Ex Parte Bain, supra, and Stirone v. United States, supra, inasmuch as the defendant was not convicted of any charge for which he was not originally indicted.

The elimination of the superfluous language in Count 2 of the indictment charging a single offense, but inartfully drawn, did not constitute a fatal amendment of the indictment as claimed by defendant. In Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 70 L.Ed.2d 1133 (1927), the Supreme Court held that part of the indictment which is surplusage may be rejected and ignored as a useless, innocuous averment without constituting an amendment to the indictment. Nor was reversible error committed by the court's effective withdrawal from the jury by instruction of that same portion of the charge concerning illegal receipt of narcotics which the government failed to support with evidence sufficient to raise a jury question. In Salinger v. United States, 272 U.S. 542, 549, 47 S.Ct. 173, 71 L.Ed. 398 (1926), the Supreme Court condoned the practice of the trial court's withdrawing from the jury certain parts of an indictment unsupported by the evidence when such action did not derogate from the accusation of the grand jury.

These decisions persuade us that the instant indictment was not amended so that the defendant was forced to stand trial and conviction on any unindicted charge.

Defendant next contends the court erred in failing to entertain his motion to set aside his previous waiver of preliminary hearing, due to a misunderstanding on his part that such a waiver was necessary in order to be freed on bond.

Following waiver of the preliminary hearing, defendant subsequently refused to waive indictment and his case was, therefore, presented to the grand jury and the instant indictment was duly returned.

■■ The purpose of a preliminary hearing is to determine whether or not there is probable cause to believe that the defendant has committed an offense. Barrett v. United States, 270 F.2d 772, 775 (8th Cir. 1959). The grand jury by the return of the indictment resolved this question and thereby eliminated the necessity for a preliminary hearing before the U. S. Commissioner. United States ex rel. Bogish v. Tees, 211 F.2d 69, 72 (3rd Cir. 1954); Barber v. United States, 142 F.2d 805, 807 (4th Cir. 1944), cert. denied 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1574 (1944).

■ Regardless of any misunderstanding the defendant might have had when he waived preliminary hearing, the trial court committed no error which was prejudicial to defendant by reason of its subsequent refusal to reopen the question of defendant's probable commission of an offense following cure of this phase of the prosecution through action by the grand jury.

Finally, the defendant submits that the arrest was illegal, that the narcotics and confession obtained thereafter were fruits of this illegal arrest, and, therefore, under the Fourth Amendment to the United States Constitution inadmissible as evidence against him. The defendant's argument as to the illegality of the arrest is primarily bottomed on the premise of lack of probable cause and the contention that it was made at Lambert Air Field located in St. Louis County and outside the jurisdictional limits of the narcotic agents of the Metropolitan St. Louis Police Force.

With regard to the latter contention, the short of the argument is that the four St. Louis Metropolitan Police Narcotic Agents were accompanied by two Federal Narcotics Agents, all of whom went to the airport on the evening of September 19 to apprehend defendant upon his return to St. Louis for possible violation of state and federal narcotic laws. These officers saw the defendant deplane, and they kept him under surveillance continuously as he entered the terminal building, apparently recognized one of the plainclothes officers, tossed the package of narcotics into a waste receptacle, and proceeded down the terminal concourse. The city officers made the arrest. In so doing, they were justified as they had probable cause to believe that a felony was being committed in their presence. We have held that under the law of Missouri even a private person can make an arrest on showing of actual commission of a felony and reasonable grounds to suspect the accused. Richardson v. United States, 217 F.2d 696, 698 (8th Cir. 1954).

■ The proper test, however, as to the reasonableness of the belief that the accused has committed a felony is judged by federal standards. Therefore, the question is whether under federal law the officers had probable cause for making the arrest without a warrant. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Only recently have we had occasion to examine the recent decisions on this subject. See Pigg v. United States, 337 F.2d 302 (8th Cir.) and Schook v. United States, 337 F.2d 563 (8th Cir.). We ruled that the legal issue of probable cause must be resolved on a case by case basis from the individual facts and circumstances.

From a factual, as well as legal, standpoint, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), affords us clear reason for disposing of the issue of probable cause raised under

the evidence in the instant case. There, an experienced narcotics agent was told by a reliable informer that the defendant was peddling narcotics, had gone to Chicago to obtain a supply, and would return by train on a certain day. The agent who had no prior knowledge of the defendant's narcotic activities other than the informer's tip, met the train and recognized the defendant from the description furnished by the informer. Defendant was then arrested without a warrant. The Supreme Court held that under such facts the arrest, search and seizure were lawful, and the articles seized in conjunction therewith were properly admitted into evidence.

■ In the case at bar the arresting officers were possessed of much stronger facts to justify probable cause to believe the defendant had violated or was violating federal narcotic laws. The officers had knowledge of defendant's reputation as a narcotic dealer, and even had him under surveillance previous to the day of his arrest. When the agents were informed that defendant was making approximately two trips per week by plane to New York City to obtain narcotics, and that on the day of his arrest he had boarded a commercial airline to New York City without luggage under an assumed name, they went to the airport to intercept him upon his return. Upon deplaning the defendant apparently recognized one of the surveilling agents whereupon he discarded the contraband narcotics and was arrested and searched within seconds after the narcotics were retrieved. The arresting officers acted upon substantially more credible information in making their arrest of defendant than the mere tip from a reliable informant held sufficient in the Draper case. Accord: Hawkins v. United States, 288 F.2d 537 (8th Cir. 1961), cert. denied 366 U.S. 975, 81 S.Ct. 1943, 6 L.Ed.2d 1264 (1961). The additional evidence of defendant's traveling without luggage under an assumed name coupled with actual observation of his abandonment of the narcotics immediately prior to arrest more than satisfied the criterion of probable cause necessary to an arrest without a warrant. Since the arrest was legal, the introduction of the narcotics and the voluntary confession into evidence was proper.

■ Nevertheless this evidence was admissible despite the question of the legality of the arrest. The narcotics were not obtained as an unlawful by-product of an illegal arrest. The plain and simple fact of the matter is that the narcotics were abandoned by defendant prior to discovery by the agents. In Burton v. United States, 272 F.2d 473 (9th Cir. 1960), cert. denied 362 U.S. 951, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960), the defendant when hailed by officers dropped a package of narcotics to the ground from beneath her coat. She was subsequently arrested and searched, but no other incriminating evidence was found. The Ninth Circuit held that there could be no defense of illegal search and seizure where the evidence used for a conviction was found to be abandoned property. Accord: Trujillo v. United States, 294 F.2d 583 (10th Cir. 1961); Lee v. United States, 95 U.S.App.D.C. 156, 221 F.2d 29 (1954).

■ As to the confession, there was no contention that it was not voluntarily given. Moreover, the statements contained in the confession were first brought out by the defendant on cross-examination of a government witness over the government's objection. The government subsequently introduced the confession into evidence without objection. It contained nothing new of an incriminating nature other than what was previously brought to light by defendant's cross-examination of the government witness. The defendant is in no position now to claim prejudice by use of the confession as the poisoned fruit of the tainted tree of illegal arrest when he first alluded to its existence on cross-examination and thereby invited admission into evidence in its entirety, notwithstanding the arrest issue. Cf. Newman v. United States, 331 F.2d 968 (8th Cir. 1964).

The judgment of conviction is affirmed.