618 P.2d 759

STATE of Idaho, Plaintiff–Respondent,

v.

Robert JOHNSON, Defendant–Appellant.

No. 12728.

Supreme Court of Idaho.

Oct. 10, 1980.

Peter D. McDermott, of McDermott & McDermott, Pocatello, for defendant–appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff–respondent.

BAKES, Justice.

Defendant appellant Robert Johnson pleaded guilty to second degree burglary on October 18, 1976. A presentence investigation was prepared and a sentencing hearing was held on April 29, 1977. The presentence investigation disclosed that the defendant had been twice granted probation, once in Utah and once in California, both as a result of convictions for possession of controlled substances, and that he had not successfully completed either probation. At the sentencing hearing the prosecutor called David Ackley, special agent for the Idaho Bureau of Narcotics, who testified that one of his department's confidential informants stated that the defendant had been observed associating with known narcotics users in Pocatello. Ackley also testified that defendant had sold $10.00 worth of heroin to one of the department's confidential informants. Ackley, on cross examination, admitted that his information about defendant was some two years old at the time of the sentencing hearing and was based on hearsay information supplied him by the confidential informant. Ackley also admitted that after the defendant's arrest for burglary the Idaho Bureau of Narcotics had unsuccessfully tried to employ defendant as a confidential informant.

Defendant objected to the court's hearing hearsay evidence indicating that the defendant was involved in the local drug culture. The court overruled defendant's objections.

Defendant was sentenced to an indeterminate term not to exceed three years at the Idaho State Penitentiary. The court indicated that defendant's past probation failures were an element of its decision not to grant defendant probation at that time. The court, additionally, expressed some indication that defendant's alleged involvement with the local drug culture may have been a factor in its sentencing decision. In imposing the sentence, the court commented as follows:

"Mr. Johnson, while you are not charged here today in this action with delivery of narcotics or any other narcotic charges, it appears that many, many of the cases that come before the Court now which involve burglaries, larcenies, things of that nature, are related either directly or indirectly to the use of narcotics or trafficking in narcotics. The courts are simply getting overloaded with these kinds of cases.

"With respect to your specific charge, there is no reasonable excuse for what you did. Your prior record is certainly not one to be classed as commendable. It's shown that you were unable to complete two previous probations, and as a result, there is no reason for me to believe that you would be able to complete one now.

"It is the judgment of the Court that you be sentenced to an indeterminate term at the Idaho State Penitentiary of not to exceed three years. You will be remanded to the custody of the sheriff at this time to await transportation by the proper authorities to commence your sentence at that institution."

Upon his attorney's request, the district court gave defendant Johnson three days to get his affairs in order before reporting to the Bannock County sheriff for transportation to the Idaho State Penitentiary. The court expressly warned defendant that failure to report would result in imposition of a more severe sentence.

"THE COURT: Now, you understand that if you do run, you are going to be brought back?

"MR. JOHNSON: I have no intentions on running.

"THE COURT: And if that happens, I can promise you that I am going to bring you in for resentencing, and the sentence will be much more severe than it has been this morning; do you understand that?

"MR. JOHNSON: Yes.

"THE COURT: I have the right to retain jurisdiction for a period of 120 days, and I will do it to that extent, that if you do not show up, you are going to be returned here and the full sentence allowable under the law will be imposed. Do you understand that?"

Unfortunately for the defendant, he did "run," not reporting back as required. He was subsequently apprehended in Arizona and returned to Idaho. A second sentencing hearing was held on July 11, 1977. At this hearing Judge Oliver presided in place of Judge Hargraves who had imposed the original sentence. The original indeterminate sentence not to exceed three years was withdrawn, and defendant was sentenced to a fixed term of five years pursuant to I.C. § 19–2513A which had become effective on July 1, 1977.[1]

Defendant Johnson argues that the district court erred in admitting hearsay evidence at the sentencing hearing through the oral testimony of Special Agent David Ackley. Johnson contends that the district court's admission of hearsay evidence precluded the defendant from cross examining the declarant in violation of defendant's guarantees of due process.

The district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing.

"A sentencing hearing is not a trial. The strict evidentiary rules which govern the proceedings in which the defendant's guilt is determined are not rigidly applied during the sentencing proceedings. ... [T]he sentencing judge is presumably able to ascertain the relevancy and reliability of the broad range of information and material which may be presented to it during the sentencing process and to disregard the irrelevant and unreliable." State v. Pierce, 100 Idaho 57, 58, 593 P.2d 392, 393 (1979).

Hearsay evidence in written form is admissible at a sentencing hearing where the defendant is afforded an opportunity to present favorable evidence and to explain or rebut adverse evidence presented. See State v. Moore, 93 Idaho 14, 454 P.2d 51 (1969). The legislature has specifically authorized submission of hearsay evidence to the court in the form of a presentence investigation report. I.C. § 20–220. A defendant is entitled to challenge the reliability of the hearsay information contained in a presentence report at his sentence hearing, and in order to exercise this right he is entitled to examine the report prior to the sentence hearing and to bring to the court's attention at the hearing matters contained in the report which he believes to be inaccurate. See State v. Ballard, 93 Idaho 355, 461 P.2d 250 (1969). It is our opinion that the defendant's right to cross examine witnesses who orally present hearsay evidence at the sentence hearing and to present evidence on his own behalf provides an adequate opportunity for the defendant to challenge the reliability of the hearsay evidence.

In Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the defendant claimed that his rights to due process were violated "in that the sentence ... was based upon information supplied by witnesses with whom the accused had not been confronted and as to whom he had no opportunity for cross examination or rebuttal." 337 U.S. at 243, 69 S.Ct. at 1081. The United States Supreme Court, in affirming the sentence imposed upon Williams, held that "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." 337 U.S. at 247, 69 S.Ct.

1. By motion dated May 30, 1979, the defendant asked the district court to correct the sentence imposed, alleging that I.C. § 19–2513A had not been enacted at the time of the offense and therefore under our holding in State v. Lindquist, 99 Idaho 766, 589 P.2d 101 (1979), the district court could not impose a fixed term sentence. The district court entered an order dated May 31, 1979, correcting the sentence from a fixed term sentence to an indeterminate term sentence not to exceed five years.

at 1083. *Williams* dealt with hearsay evidence presented at sentencing which was introduced through a presentence investigation report. However, the reasoning in *Williams* is equally applicable to the situation where hearsay evidence is introduced at the sentencing hearing through oral testimony of a live witness. The rule of *Williams* was later codified by Congress in 18 U.S.C. § 3577, and just this year reaffirmed by the United States Supreme Court.

> "The principles governing criminal sentencing in the United States District Courts require no extensive elaboration. Congress has directed that
>
> '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.' 18 U.S.C. § 3577.
>
> "This Court has reviewed in detail the history and philosophy of the modern conception that 'the punishment should fit the offender and not merely the crime.' *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949); see *United States v. Grayson*, 438 U.S. 41, 45–50, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). Two Terms ago, we reaffirmed the 'fundamental sentencing principle' that ' "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." ' " *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980).

Where the defendant has an opportunity to cross examine the witness presenting hearsay evidence at the sentencing hearing, the defendant will be able to probe the credibility of the testifying witness and the reliability of the information presented through hearsay evidence. In *State v. Moore, supra*, we approved the use of a presentence investigation report and other written hearsay at a probation hearing. We held in that case that

"the trial court's discretion to consider a wide range of information about a particular defendant even though it would not be admissible under the rules of evidence often may be of great benefit to a defendant. We hesitate to apply unduly strict procedural requirements which would operate equally to prevent defendants from marshalling hearsay and other evidence favorable to themselves." 93 Idaho at 18, 454 P.2d at 55.

The trial court's duty to provide individualized sentencing requires access to the broadest range of information about the defendant; the sentencing judge will be able to separate the reliable evidence from the unreliable and to disregard that which is irrelevant or of dubious credibility. *See State v. Pierce, supra.*

Johnson in this case was afforded an opportunity to cross examine Special Agent Ackley and did so. On cross examination Johnson was able to bring out the fact that Ackley's hearsay information concerning Johnson's involvement with drugs was some two years old and was obtained from undercover narcotics agents, one of whom was unidentified. The procedure followed by the parties at district court was consistent with the court's need for as much information about the defendant as possible to enable it to make a proper individualized sentencing decision and with the defendant's right to assure that false or unreliable information was not utilized in the court's sentencing decision. The admission of hearsay evidence through testimony of a live witness subject to cross examination by the defendant at the sentencing hearing does not constitute a deprivation of due process.

Defendant Johnson also contends that the district court erred in increasing his sentence to a fixed five year term after initially sentencing him to an indeterminate term. Johnson was sentenced to an indeterminate term not to exceed three years on April 29, 1977, and was given until May 3, 1977, to surrender and commence serving

his sentence.[2] Johnson did not surrender on May 3, and a bench warrant was issued for his arrest. When Johnson was apprehended he was brought before the district court and resentenced to a fixed term of five years pursuant to I.C. § 19–2513A. Johnson argues that the district court was without jurisdiction to enhance his original sentence.

This Court held in *McFarland v. Hunt*, 79 Idaho 262, 313 P.2d 1076 (1957), that once a valid sentence has been put into execution the trial court cannot modify it. *See United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). However, the original sentence imposed on Johnson was never put into execution. Following the sentencing, the court granted Johnson three days to enable him to attend to his personal affairs prior to commencing his sentence. Upon Johnson's failure to surrender to commence serving his sentence at the appointed time on May 3, 1977, the district court issued a bench warrant for Johnson's arrest. Johnson's subsequent arrest in Arizona and extradition to Idaho were made pursuant to the bench warrant issued May 5, 1977. Prior to his resentencing on July 11, 1977, Johnson had not been placed in the custody of the Board of Corrections under his original sentence and commitment. Therefore, the district court had jurisdiction to withdraw its sentence and impose a new one since the defendant has not commenced serving the original sentence. *See McFarland v. Hunt, supra; United States v. Benz, supra; Williams v. United States*, 422 F.2d 1318 (5th Cir. 1970); *Vincent v. United States*, 337 F.2d 891 (8th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965), *rehearing denied*, 381 U.S. 947, 85 S.Ct. 1775, 14 L.Ed. 713 (1965); *Oxman v. United States*, 148

F.2d 750 (8th Cir. 1945), *cert. denied* 325 U.S. 887, 65 S.Ct. 1569, 89 L.Ed. 2001 (1945); *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972); *Scharbrough v. Cupp*, 7 Or. App. 596, 490 P.2d 529 (1971), *cert. denied*, 409 U.S. 951, 93 S.Ct. 295, 34 L.Ed.2d 221 (1972); *Scott v. State*, 64 Wis.2d 54, 218 N.W.2d 350 (1974). *But see, Boles v. Superior Court, for the County of San Joaquin*, 37 Cal.App.2d 479, 112 Cal.Rptr. 286 (1974) (trial court is without power to revise deliberately exercised discretion following imposition of sentence as pronounced and formal entry in court minutes). The district court did not err in withdrawing Johnson's original unexecuted sentence on July 11, 1977, and imposing a new sentence on defendant.

The defendant's sentence, as corrected by the district court's order of May 31, 1979, is affirmed.

DONALDSON, C. J., and SHEPARD, J., concur.

BISTLINE, Justice, dissenting:

Johnson claims that he could not be twice sentenced for the same offense where the second sentence is greater than the first. Johnson maintains that the court was without jurisdiction—in the power sense—to increase his sentence, having once imposed upon him a wholly valid sentence. I agree.

Judge Hargraves at the first sentencing procedure did not have the benefit of *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980 (1980). Judge Lodge, the trial judge in *Pedraza*, was also of the opinion that where execution of sentence was suspended, a district court, upon revocation of probation, could vacate a first sentence and reimpose a second and greater sentence. One member of this Court, dissenting in *Pedraza*, shares that same opinion. I do not for one minute

---

**2.** Although not raised as an issue in this appeal by either party, the practice followed by the court in this case of sentencing defendant and then giving him three days to get his affairs in order before commencing the serving of his sentence, appears to be contrary to the terms of I.C. § 19–2703 which provides in part that "[i]f the judgment is for imprisonment . . . the defendant must forthwith be committed to the custody of the proper officer, and by him de-

tained until the judgment is complied with." If the trial courts intend to give a defendant time to get his affairs in order prior to commencing serving his sentence, the court should delay the imposition of that sentence until the end of the period of time that the defendant is allowed free to get his affairs in order. Had the trial court followed the provisions of I.C. § 19–2703, the major issue in this case, upon which the Court has split, would have been avoided.

doubt but that Judge Hargraves, Judge Lodge, and Judge Oliver, if sitting with this Court, as often they do, on the strength of *Pedraza* would *not* join in the opinion which the Court issues today. In *Pedraza* this Court held:

"We conclude that when a trial court has initially sentenced a criminal defendant to a definite term of imprisonment, but has suspended the ,sentence and granted probation, it may not later upon revocation of probation set aside that sentence and increase the term of imprisonment." *Id.* at 443, 614 P.2d at 983.

We therein stated our reliance on applicable statutes and procedures, and on *Roberts v. United States*, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

In order to fully understand the total inconsistency which the Court manifests in this case as viewed against *Pedraza*, it is first necessary to take close note of the sentencing proceedings to which Johnson was twice exposed for the same offense.

## I

The defendant, Johnson, pleaded guilty and, like Pedraza, came before the court for sentencing. The trial court, Judge Hargraves, after hearing testimony and reviewing Johnson's presentence report, and after giving due and proper consideration to the facts of the crime and the defendant to be sentenced, orally stated the defendant was convicted, and imposed an indeterminate term of confinement not to exceed three years. A written judgment of conviction and imposition of sentence was promptly entered on April 29, 1977, a copy of which is appended hereto. It is in all respects a valid judgment and imposition of sentence.

Judge Hargraves on that very same date signed and entered a district court minute entry and order, showing the proceedings had at sentencing in Johnson's case. This entry sets forth both the judgment of the court that Johnson would be imprisoned "for an indeterminate term not to exceed THREE (3) YEARS," and the court's order for executing Johnson's sentence:

"IT IS FURTHER ORDERED that the said defendant report to the Sheriff of Bannock County on Tuesday, May 3, 1977 no later than 9:00 a. m., to be by him delivered to the proper officer or officers thereof to be by said officer or officers conveyed to said site, at which time any bond will be exonerated."

(It was the foregoing order, part and parcel of the court minutes of the sentencing proceeding of April 29th, which led to the issuance of a bench warrant for Johnson's arrest upon his failure to report to the sheriff.)

Judge Hargraves made no claim of inherent jurisdiction to enhance Johnson's sentence. On the contrary, having at the sentencing hearing *denied* a request that the court retain 120 day jurisdiction, in thereafter yielding to the later request for three days of reprieve, Judge Hargraves was careful to specifically warn Johnson that he had "the right to retain jurisdiction for a period of 120 days, and I will do it to that extent, that if you do not show up, you are going to be returned here and the full sentence allowable under the law will be imposed."

Of that Judge Oliver thereafter proceeded to deal with Johnson's non–feasance in failing to report on that basis and by virtue of the 120 day retained jurisdiction there should be little doubt. As mentioned, *Pedraza* was not in existence, and there was not an Idaho case delineating a district court's sentencing rights and duties where the execution of sentence was suspended, rather than the judgment itself with imposition of sentence being withheld.

Johnson was apprehended in Arizona and returned to Idaho. In the absence of Judge Hargraves, who was hospitalized, Johnson was brought before Judge Oliver. The minute entry and order of July 11, 1977, shows the following disposition of the first sentence:

"After consultation with the Hon. George W. Hargraves, who is presently hospitalized, this Court determines that the sentence heretofore imposed should be withdrawn and a new sentence imposed. IT IS SO ORDERED."

As is reflected therein and also in the second judgment of conviction, appended hereto, Judge Oliver increased the term of imprisonment to a fixed term of 5 years. The reporter's transcript shows that Judge Oliver said to Johnson:

"You were sentenced to an indeterminate term not to exceed a period of three

years in the Idaho State Correctional Institution.

"At that time, you were advised to report to the Bannock County Sheriff on or before the 3rd day of May, 1977 at the hour of 9:00 a. m. *in execution of that sentence.* You failed to appear and report to the Bannock County Sheriff *in execution of that sentence ...."* (Emphasis added.)

Judge Oliver pointedly remarked to Johnson that "the Court still having jurisdiction in this matter is going to reimpose a sentence."

It is self–evident from the above quoted remarks of Judge Hargraves and Judge Oliver that each judge in each instance proceeded in the belief that retention of 120 day jurisdiction and the placing of Johnson on three days of unsupervised parole or probation, subject only to the one requirement that he report to the sheriff, allowed revocation and reimposition of sentence.

At the conclusion of Johnson's first sentencing, his status, whether it might properly be termed that of a probationer, parolee, or trustee, was simply that of a defendant whose sentence condemned him to be transported to Boise for confinement. Allowed three days of freedom, Johnson was in effect made his own keeper. As such he was obliged to deliver himself up for transportation and confinement. That he do so was the only requirement of his unsupervised parole. His situation was exactly the same as it would have been had the sheriff then taken him into custody, as the final judgment and commitment order therein provided, and had the sheriff, with or without encouragement from the court, then released him from incarceration for the weekend. So viewed, and there has been no other view set forth, it is impossible to distinguish this factual background from that in *Pedraza* and that in *State v. Kerrigan,* 98 Idaho 701, 571 P.2d 762 (1977). In all three cases there is a final judgment of conviction which includes imposition of sentence; in all three execution of sentence was suspended, but with varying types of parole or probation.

It is impossible to reconcile this case with *Pedraza* and *Kerrigan.* As stated in *Roberts v. United States,* 320 U.S. 264, 267, 64 S.Ct. 113, 115, 88 L.Ed. 41 (1943), "two valid sentences for the same conviction cannot coexist." With the pronouncement of a first valid sentence, the court's jurisdiction is exhausted. *See Miller v. Aderhold,* 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702 (1932). I.C. § 20–209A provides that the term of confinement begins with the very day of sentencing, but that where a person who voluntarily absents himself from the penitentiary or jail, or "from the custody of an officer after his sentence," such absent time shall not be counted as time served under sentence.

It is beyond any dispute that the sentence first imposed upon Johnson was in all respects a valid sentence. No one contends otherwise. Certainly the State does not. It was under and by virtue of the sentencing proceedings which took place in open court on April 29, 1977, and in particular the order of Judge Hargraves that Johnson report to the sheriff, that the bench warrant was issued which brought about Johnson's apprehension and return into court. It cannot be doubted in the least that the sheriff, with the absolutely valid judgment and commitment of April 29th in hand, could have turned Johnson over to the proper officers for delivery to the prison at Boise. And that would have been the end of it. And a proper end.

II

Notwithstanding that Judge Oliver clearly considered the order given to Johnson that he report to the sheriff as being "in execution of that sentence," the Court hinges its decision today solely on the basis that "the original sentence imposed on Johnson was never put into execution," and on the misapprehension that "Johnson had not been ordered into the custody of the Board of Corrections under his original sentence and commitment." Implicit in its holding is the fallacious premise that the district courts may at any time after entry of final judgment imposing sentence withdraw that judgment–provided only that defendant has not yet been incarcerated–and thereafter enter a second judgment imposing a greater sentence. Such holding flies into the face of constitutional prohibitions, and is entirely without precedent.

The trial bench and bar will find it incomprehensible that the Court can, in issuing its opinion in *Pedraza*, place much reliance on *Roberts v. United States, supra*, and weeks later pay that case no heed whatever. This case and *Pedraza* being indistinguishable, it is important to take careful note of *Roberts*.

The defendant in that case challenged the *power* of the district court to increase his sentence from 2 to 3 years. That defendant had received an original sentence of two years, but he was released on probation. Following a revocation hearing the court set aside the original sentence, and imposed a new sentence of three years.

Keeping in mind that the Court today in Johnson's case cites a number of federal circuit court cases as authority sustaining the jurisdiction (in the power sense) of an Idaho district court to vacate an original valid sentence and reimpose a second and greater sentence, it is startling to read in *Roberts* that there "the government concedes that federal courts had no such power prior to the passage of ... [the Probation] Act." 320 U.S. at 265–66, 64 S.Ct. at 114. The Supreme Court was of the same view: "If the authority exists in federal courts to suspend or to increase a sentence fixed by a valid judgment, it must be derived from the Probation Act." *Id.* at 265, 64 S.Ct. at 114.

Authority compelling that concession by the government and that declaration by the Supreme Court included *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), and *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). 320 U.S. at 266, 64 S.Ct. at 114.

In approaching its discussion in *Roberts*, the Supreme Court stated:

"But before we can conclude that the Act authorized the District Court thereafter to increase the sentence imposed by the original judgment we must find in it a legislative grant of authority to do four things: revoke probation; revoke suspension of execution of the original sentence; set aside the original sentence; and enter a new judgment for a longer imprisonment." *Id.*

The holding in that case, and so denominated, was "that having exercised its discretion

by sentencing an offender to a definite term of imprisonment in advance of probation, a court may not later upon revocation of probation set aside that sentence and increase the term of imprisonment." *Id.* at 272–73, 64 S.Ct. at 117–18. All of which makes it abundantly clear that prior to the Probation Act no such power existed, and no such power was created by that Act. A highly significant passage in *Roberts* is that stating that where sentence *is* imposed, "the defendant would be sentenced in open court to imprisonment for a definite period; ... he then would be informed of his release on probation upon conditions fixed by the court. ... [W]here execution of sentence is suspended, the defendant leaves the court with knowledge that a fixed sentence for a definite term hangs over him." *Id.* at 268, 64 S.Ct. at 115.

All debate over the proposition should come to an end by a *careful* reading of *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). There the following question was certified from a circuit court to the Supreme Court:

" 'After a District Court of the United States has imposed a sentence of imprisonment upon a defendant in a criminal case, and after he has served a part of the sentence, has that court, during the term in which it was imposed, power to amend the sentence by *shortening* the term of imprisonment?' " *Id.* at 306, 51 S.Ct. at 113 (emphasis added).

The Supreme Court answered in the affirmative:

"The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by that court. *Goddard v. Ordway*, 101 U.S. 745, 752, 25 L.Ed. 1040. The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. *In re Lange*, 85 U.S. (18 Wall.) 163, 167–174, 21 L.Ed. 872; *Bassett v. United States*, 9 Wall. 38, 19 L.Ed. 548. In the present case the power of the court was exercised to mitigate the punish-

ment, not to increase it, and is thus brought within the limitation." 282 U.S. at 306–07, 51 S.Ct. at 114.

The court then explained the constitutional prohibition against *increasing* a sentence during the same term using the language from *Ex parte Lange, supra* :

" 'For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?

" 'The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.' " 282 U.S. at 308, 51 S.Ct. at 114 (quoting 85 U.S. at 173, 21 L.Ed. at 878).

The *Benz* court then noted that in the *Lange* case the court had gone on to say that, during the term, a judgment for two years imprisonment could be vacated and a *lesser* sentence imposed, either that of one year's imprisonment, or a $200 fine, the latter only in the event that no time had been served on the first sentence. Obviously a reduction in sentence being served is not two punishments for the same offense, but time served *plus* a fine would be in violation.

The power of a federal court to *lower* a sentence during the term in which the sentence has been imposed is seen as firmly established. But always and only to lower. So in *Benz* note was approvingly taken of the construction put on *Lange* by a United States Circuit Court for the Eastern District of Wisconsin, where a defendant's sentence had been *reduced* during the term from 2 years to 1½ years:

" 'In *Ex parte Lange,* supra, the doctrine so stated is distinctly recognized, but the case is distinguished as one where the statute authorized imprisonment, or fine, in the alternative only, and the sentence imposed both; and the majority opinion merely holds that new sentence of imprisonment alone cannot be imposed after payment of the fine, which operated as a satisfaction of the prior judgment.' " 282 U.S. at 310, 51 S.Ct. at 115 (quoting *In re Graves,* 117 F. 798, 799 (E.D.Wis.1902)).

Thus it is seen that in the federal system there is no claim whatever that a sentence once imposed can be increased. Any doubt, and there should be none on a close reading of *Lange,* is laid to rest by the *Roberts* opinion. While it is true that our case today is not in the federal system, I take it to be the law that the Fifth Amendment to the Constitution of the United States is applicable to the state courts.

As is often the case, entry of judgment of conviction in a criminal case is in Idaho much the same under our I.C. § 19–2519 as it is under California's Penal Code § 1207. In *People v. Banks,* 53 Cal.2d 370, 1 Cal. Rptr. 669, 348 P.2d 102 (1959), that court made it abundantly clear that the entry of a judgment of conviction of a felony together with imposition of sentence of imprisonment is in and of itself punishment:

"[T]he defendant acquires the legal status of a person who has been both *convicted* of a felony *and sentenced* to such imprisonment. During the maximum period of such term the defendant so sentenced may be retained in the constructive custody of the court or may at any time, in the discretion of the court, be commuted to custody of the prison authority. The term of imprisonment in either case is that to which he was sentenced . . . .

"It is, of course, express statutory law that 'When judgment upon a conviction is

rendered, the clerk, or if there is no clerk, the judge, must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction, if any. A copy of the judgment of conviction shall be filed with the papers in the case.' (Pen. Code, § 1207.) Upon entry of such judgment and withholding of commitment the sentenced defendant is held in the custody, actual or constructive, of the court and is entitled to only such privileges as the court may affirmatively prescribe in its order. Mere stay of execution of an entered judgment manifestly does not entitle the defendant to his freedom or otherwise relieve him of the disabilities resulting from conviction and imposition of judgment of imprisonment in a state prison. So completely are his rights suspended and his status established that, in the event of any violation of the terms of probation, the court at any time during the probationary term may forthwith require his arrest and commit him to the prison authority." *Id.* at 112 (footnote omitted).

As to whether suffering entry of judgment of felony conviction and imposition of sentence of imprisonment amounts to punishment, one need only consider that in *People v. Banks* such was defendant's status when he was apprehended in possession of a firearm, contrary to a statute forbidding such possession by "one previously convicted of a felony."

In *People v. McAllister*, 15 Cal.2d 519, 102 P.2d 1072 (1940), the California Supreme Court, quoting the federal rule as to alteration or amendment of criminal judgments *during the term* (coming down via *Bronson v. Schulten*, 104 U.S. 410, 415, 26 L.Ed. 797, 799 (1881)), observed that California had abolished terms of court, and with due regard for its statutes, from which Idaho's are taken, declared the rule as follows:

"*If the sentence has been entered in the minutes of the court, of if the defendant has begun serving said sentence or has been restrained by the sentence imposed,* then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of said sentence, then it is proper for the court to change the ·sentence originally pronounced." 102 P.2d at 1075 (emphasis added).

The *McAllister* rule was reaffirmed in *Ex parte Pedrini*, 33 Cal.2d 876, 206 P.2d 699, 702 (1949), with the observation that there were then in that state two statutory exceptions, of no pertinence here. Similarly, of course, we have in Idaho statutory provisions for 120 day retained jurisdiction, and Idaho Criminal Rule 35–which specifically allow for *reduction* of a sentence.

More recently, Chief Justice Traynor, also writing for a unanimous court, as was so in the two aforementioned cases, cited *Pedrini* for the proposition that the superior court having imposed sentence on May 23rd, was on July 13th "without power to thus 'correct' its sentence *as pronounced and formally entered in the minutes.*" *In re Wimbs*, 65 Cal.2d 490, 55 Cal.Rptr. 222, 421 P.2d 70, 75 (1966) (emphasis added). Even more recently a California court of appeals reaffirmed the holdings of *People v. Banks, supra,* and *In re Wimbs, supra,* citing the latter for the proposition *"that upon the imposition of sentence as pronounced and its formal entry in the minutes, the trial court is without power to revise its deliberately exercised judicial discretion." Boles v. Superior Court,* 37 Cal.App.3d 479, 112 Cal.Rptr. 286, 289 (1974) (emphasis added).

There is no reason why we should not today accept the reasoning of the California courts and at the same time yield to our federal and state constitutions. There is every reason why we should. The cases from Oregon and Kansas cited in the Court's opinion are pitiful authority to be used as a support upon which to base a holding that a trial court, having exercised its judicial discretion at sentencing, may thereafter vacate a wholly valid judgment imposing sentence and enter a second judgment imposing a greater sentence–such be-

ing occasioned only by either the wrath or disappointment of a trial court whose order of parole was not complied with.

As a most respectable United States Supreme Court said in 1874, after having recognized the power in federal courts to amend both their civil and criminal judgments, in term, "[i]t would seem that there must, in the nature of the power thus exercised by the court, be, in criminal cases, some limit to it." *Ex parte Lange*, 85 U.S. 163, 167–68, 21 L.Ed. 872, 876 (1874).

### III

Even were there not the abundance of law on the issue which should guide the Court today in the correct direction, or were there no law at all, the monstrosity of the proposition, as viewed by laymen, is such that an appellate court should have no trouble in reaching a correct resolution. A defendant has pleaded guilty, and has gone before the court to receive his sentence. The court gives thorough consideration to his case, with due regard to the particular crime, and to the particular offender, and searchingly reaches a decision that three years of imprisonment is appropriate. Judgment is so entered. The court minutes are promptly drawn to show the proceeding and the sentence imposed.

In what has to be considered a commendable display of leniency (and without any statutory authority to which reference might be made) the court, in furthering the sentence imposed, places on defendant the duty of delivering himself to the jail house door–but allows defendant three days of "travel–time" in which to do so.

Now, where that defendant fails in the trust placed in him, should he be handed another two years of penal time for his human frailty? I think not, and were there no law to guide us, I would so hold.

In that thought I am also guided by considerations of our 120 day retained jurisdiction statute. The obvious purpose of this benevolent provision is to allow district courts the option of retaining jurisdiction over a sentenced felony defendant for the salutary purpose of withdrawing a person deemed a suitable recipient of beneficence from the maw of the penitentiary.

Here, however, the trial court made it quite clear that 120 day jurisdiction was retained in order *to increase* defendant's sentence should he fail his trust. That statute was never intended for that purpose. As a result of the Court's holding today, defense counsel may well think twice before requesting that their criminal defendants be placed on 120 day retained jurisdiction.

McFADDEN, J., concurs.

### APPENDIX

**In the District Court of the Sixth Judicial District**

Of the State of Idaho,

In and for the County of Bannock.

.........SECOND.............Term, A. D., 19.77

Present Hon. ..... ARTHUR P. OLIVER................Judge.

| STATE OF IDAHO, against | CONVICTED OF |
|---|---|
| ...... ROBERT JOHNSON ........ | ...... BURGLARY IN THE SECOND DEGREE I.C. 18–1401 |

Now, on this ........11th........ day of ........July........, 19.77., the County Prosecuting Attorney with the defendant and his counsel, ................. Peter D. McDermott ............... came into court. The defendant was duly informed by the Court of the nature of the information found

against him for the crime of . . . . . . . . . . . . BURGLARY IN THE SECOND DEGREE . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . committed
between July 23 and Aug. 8, 1976
. . . . . . . . . . . . . . . day of . . . . . . . . . . . . . . . . . . . . . , 19. . . , of his arraignment and plea of
"Guilty as charged in the information," on the . . . . . . . 20th . . . . . . day of . . . . . October . . . . .
A. D., 19 .76.

The defendant was then asked by the Court if he had any legal cause to show why judgment should not be pronounced against him, to which he replied that he had none. And no sufficient cause being shown or appearing to the Court;

NOW, THEREFORE, the said defendant having been convicted of the crime of . . . . . . . . . . .
. BURGLARY IN THE SECOND DEGREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . , it is hereby ordered, considered and adjudged that the said defendant, . . . ROBERT JOHNSON . . . . . . . . . . . . . . . . . . . .
be imprisoned and kept at a site designated by the Idaho State Board of Corrections for . . . . . . . . . . . .
. . . . . . . . . . . . . . . . a fixed term of five (5) years under Sec. 19–2513A, I.C. . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . commencing from the date of his sentence.

And it is further ordered and adjudged that the said defendant be and he hereby is remanded to the Sheriff of Bannock County, Idaho, to be by him delivered to the proper officer or officers thereof to be by said officer of officers conveyed to said site. Credit for . . . . . . . . . . days shall be given toward said sentence for time spent in custody in connection with the above offense.

DATED this 11th day of July, 1977.

/s/ Arthur P. Oliver . . . . . . . .
Judge of said District Court

STATE OF IDAHO ⎫
⎬ ss.
COUNTY OF BANNOCK ⎭

I, Tim Eriksen Clerk of the District Court of the Sixth Judicial District of the State of Idaho, in and for the County of Bannock, do hereby certify the foregoing to be a full, true and correct copy of the Judgment duly made and entered on the minutes of the said District Court in the above entitled action, and that I have compared the same with the original, and the same is a correct transcript therefrom, and of the whole thereof.

ATTEST, my hand and the Seal of said District Court, this . . . . . . . . . . . . . . . . . . . . . . . . . . . . . day of . . . . . . . . . . . . . . . . . , 19. . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Clerk
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**In the District Court of the Sixth Judicial District**

Of the State of Idaho,

In and for the County of Bannock.

. . . . . . . . First . . . . . . . . . . . . . . . . . . . . Term, A. D., 19 . 77
Present Hon. . . . . . George W. Hargraves . . . . . . . . . . . . . . . . . Judge.

Now, on this ....... 29th ....... day of ....... April ......., 19.77, the County Prosecuting Attorney with the defendant and his counsel, ................ Peter D. McDermott ............... came into court. The defendant was duly informed by the Court of the nature of the information found against him for the crime of ....... BURGLARY IN THE SECOND DEGREE, I.C. 18–1401 ....... ............................................................................committed sometime between 7/23/76 and 8/8/76 .................... day of ......................., 19..., of his arraignment and plea of "Guilty as charged in the information," on the ...... 20th ...... day of ..... October ..... A. D., 19.76.

The defendant was then asked by the Court if he had any legal cause to show why judgment should not be pronounced against him, to which he replied that he had none. And no sufficient cause being shown or appearing to the Court;

NOW, THEREFORE, the said defendant having been convicted of the crime of ................. BURGLARY IN THE SECOND DEGREE, I.C. 18–1401 ..................., it is hereby ordered, considered and adjudged that the said defendant, ... ROBERT JOHNSON ....................... be imprisoned and kept at a site designated by the Idaho State Board of Corrections for ............. ... an indeterminate term not to exceed THREE (3) YEARS ............................... ............................................................................ ............................................. commencing from the date of his sentence.

And it is further ordered and adjudged that the said defendant be and he hereby is remanded to the Sheriff of Bannock County, Idaho, to be by him delivered to the proper officer or officers thereof to be by said officer of officers conveyed to said site. Credit for .......... days shall be given toward said sentence for time spent in custody in connection with the above offense.

/s/ George W. Hargraves .... Judge of said District Court

STATE OF IDAHO

ATTEST, my hand and the Seal of said District Court, this .............. 29th ......... day of ...... April ......, 19.77.